Cornelius L. FAGOT

v.

Salvador Joseph CIRAVOLA and John Walter Flannery, III.

Civ. A. No. 77–554.

United States District Court,
E. D. Louisiana.

Feb. 2, 1978.

Julian R. Murray, Jr., W. Glenn Burns, New Orleans, La., for plaintiff.

Adams & Reese, Lawrence L. McNamara, New Orleans, La., for Ciravola, Flannery & American Home Assurance Co.

Oneal C. Legendre, Jr., Kenner, La., for Ciravola & Flannery.

ALVIN B. RUBIN, Circuit Judge: *

A jury in this Section 1983 [1] action found that the plaintiff, Cornelius L. Fagot, a Continental Airlines ticket agent at New Orleans International Airport, was arrested without probable cause by the individual defendant police officers, Salvador J. Ciravola and John W. Flannery, III, on charges of disturbing the peace, resisting an officer, obstructing police, and simple battery, all in alleged violation of various ordinances of the city of Kenner, Louisiana. The jury verdict was for $10,000 general damages and $10,000 punitive damages against the individual defendants and their insurer, the American Home Assurance Company ("American Home"). Treating the jury verdict as an end merely to the first stage of hostilities, the parties have fired a fusillade of post-trial motions, some of which raise issues for the first time that should properly have been raised earlier.

---

* Acting as district judge by special designation of Chief Judge John R. Brown.

1. 42 U.S.C.A. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## I.

American Home moves, under Rule 59(e), Fed.R.Civ.Pr., that the judgment in this action, which was entered for $20,000, without specifically naming American Home, be amended to name American Home as a defendant and to indicate that the jury award comprises $10,000 general and $10,-000 punitive damages. The omission of a named defendant clearly requires correction. The plaintiff offers no objection to a specification of the component parts of the total damages award. Consequently, this motion of the defendant insurer is in all respects GRANTED.

American Home further moves for judgment notwithstanding the verdict, or for a new trial, on three grounds: (a) Mr. Fagot has not proved that the individual defendants are insured for punitive damages; (b) the policy involved does not insure for punitive damages; and, (c) in any case, the insuring of punitive damages is against public policy.

■ The wording of the professional liability policy that covered the City of Kenner Police Department and its paid employees at the time of Mr. Fagot's arrest would be highly misleading if the policy did not cover jury awards of punitive damages. Under the heading "Insuring Agreements," on the final page of the policy, as amended by an "Amendatory Endorsement," dated July 1, 1975, the policy reads in part:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of, *but not limited to*, negligent acts, errors, or omissions of the paid employees of the law enforcement agency named in the declaration as follows: Coverage A—Personal Injury . . . .

(Emphasis added.) Below, under "Definitions," the policy reads further:

> "Personal Injury" means false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States of America or Canada, for which law enforcement officers may be held liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Not only does the "but not limited to" clause in the first paragraph belie the insurer's contention that the policy excludes damages for willful and malicious acts, but the list of torts that defines "Personal Injury" in the American Home policy includes acts that necessarily imply deliberateness and malice. The insurer's heretofore unspoken intention not to insure for punitive damages, as expressed in the affidavit submitted after trial of American Home's senior underwriter, constitutes mere parol evidence inconsistent with the written contract and of no binding effect. LSA–C.C., art. 2276; *Boothe v. American Assurance Co.*, La.App.1976, 327 So.2d 477. As a matter of law, the policy in question, as issued, covers punitive damages.

■ Further, in a case of police liability such as this, public policy does not proscribe insurance coverage for punitive damages. American Home's obligations with respect to its insured are embodied in its contract of insurance, governed in turn by the law of Louisiana. It is true, as American Home points out, that under Louisiana decisional law, awards of damages wholly punitive in nature are not permitted for acts deemed wrongful under Louisiana law. *Commercial Union Ins. Co. v. Upjohn Co.*, W.D.La.1976, 409 F.Supp. 453, 458; *but cf., Loeblich v. Garnier*, La.App.1959, 113 So.2d 95, 103. However, whether Louisiana permits punitive damages for Louisiana torts is not determinative of whether the state permits liability insurance for punitive damages predicated on acts deemed wrongful by other jurisdictions. No prohibition against such insurance has yet been declared either by the legislature or by the courts of the state.

Similarly, the question cannot be determined by passing references in Louisiana decisions to a public policy prohibiting private malefactors from insuring against

their own wrongdoing, e. g., *Baltzar v. Williams*, La.App.1971, 254 So.2d 470, 472. In the present case, a police department has purchased an insurance policy for the protection of its employees against civil liability. The purchase of such a policy is presumably motivated by the department's desire to encourage vigorous police work despite the often uncertain state of law defining the obligations and responsibilities of police officers. It cannot be said this is against the public interest.

A consequence of permitting such insurance may be, as American Home says, to relieve transgressors of the burden of punitive damages. It is also true that the purpose of punitive damages is to discourage iniquity. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled "punitive." Whether assessing punitive damages against police officers will have a greater deterrent effect on wrongdoing than holding their insurers liable as well is a matter better left to legislative investigation than judicial speculation.

Moreover, it is as much at the heart of tort law to compensate victims as to deter wrongdoers. Indeed, to the extent that Louisiana permits damage awards that other states would term "exemplary" or "punitive," Louisiana has relied on what may often be viewed as the compensatory nature of even punitive damages. *Loeblich v. Garnier, supra.* Considering the type of wrong here involved, the nature of the insurance policy, and the laws and public policies of the United States and of Louisiana, we conclude that the liability coverage is permissible. *Cf., Northwestern National Cas. Co. v. McNulty*, 5 Cir. 1962, 307 F.2d 432, 442. The motion of American Home for judgment notwithstanding the verdict, or for a new trial, is DENIED.

## II.

■ The individual defendants, together with American Home, have filed separate motions for judgment notwithstanding the verdict and for a new trial on a variety of grounds.

The sole ground of the defendants' motion for judgment notwithstanding the verdict, and the first ground of their motion for a new trial, is an asserted total absence of any evidence to support a finding of wrongdoing on the part of either police officer. According to the defendants, the evidence pointed unequivocally to a mere accurate reporting by Flannery to Ciravola of Flannery's encounter with Fagot, and Ciravola's subsequent arrest of Fagot for probable cause. The transcript fully reveals, however, that the jury heard testimony from which it could conclude both that Officer Flannery intentionally exaggerated his report to Sgt. Ciravola, and that Sgt. Ciravola arrested Mr. Fagot solely out of personal animus and knowingly without probable cause. As the defendants recognize in their motion, it is not required that the evidence before the jury be one-sided to sustain the verdict:

> . . . [I]f there is substantial evidence opposed to the motions [for directed verdict and for judgment notwithstanding the verdict], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied
>
> . . . .

*Boeing Co. v. Shipman*, 5 Cir. 1969, 411 F.2d 365, 374–375. Substantial evidence sustaining the verdict exists here. The defendants' joint motion for judgment notwithstanding the verdict is DENIED.

■ The second asserted ground supporting the defendants' motion for a new trial is the court's rejection of the defendants' proposed charge regarding the definition of battery, one of the offenses for which Mr. Fagot was arrested. The defense asked the court to charge the jury: "A battery includes every intentional touching, no matter how trifling, of another in an angry, rude, or hostile manner." The jury was instead charged on the bare wording of the Kenner statute: "Battery is the intentional use of force or violence upon the person of another." Kenner City Code, §§ 7–32, 7–34.

The defendants' suggested definition is based on a passing construction of the *state* battery statute, LSA–R.S. § 14:33, mentioned as dicta in two decisions rendered in 1896 and 1924, respectively. Given the highly suggestive wording of the definition, the court declined to offer it as a charge absent more decisive authority that these dicta do define criminal battery in Louisiana and any authority at all that Kenner intended to adopt the state definition in interpreting its ordinance. The ordinance is clear on its face, and the jury instruction was not misleading. Consequently, this ground for a new trial must be rejected.

■ The defense next urges that a new trial is required because the court's remarks to the jury just prior to a late afternoon recess (Transcript, 352–353) improperly focused attention on the issue of credibility with respect to Mr. Fagot's alleged battery, thus diverting attention from the precise issue whether any probable cause existed for Mr. Fagot's arrest on any of the charges against him. In context, the remarks were not misleading. The defense raised no objection to the remarks. To the extent that the remarks may have been misleading, they were corrected by the court's final instructions on probable cause, which the defense concedes to have been correct. A new trial will, therefore, not be ordered on this ground.

■ Aside from the battery charge, the defense argues that the court committed three further "fundamental errors" in charging the jury. The first asserted error was posing the question to the jury: "Did the defendant Flannery arrest Mr. Fagot without probable cause?" This question was supposedly prejudicial because, according to the defense, Officer Flannery did not participate at all in the arrest.

Midway through the trial, the court offered all parties copies of its proposed jury charges and jury interrogatories for the precise purpose of permitting a thorough examination of them in advance, the raising of timely objections, and the incorporation of constructive suggestions. The defense at no time prior to jury deliberation objected to the court's question.

The defense's failure to object aside, there is no reason to believe this question was misleading in context and in view of the evidence. Though not the arresting officer, Flannery was, in a commonly understandable sense, involved in the arrest. The defense itself argues that Flannery's report to Ciravola was the sole factor precipitating Mr. Fagot's arrest. The wording of the court's question consequently provides no ground for a new trial.

■ The next alleged error in the jury charge was the court's failure to ask the jury to assess punitive damages against each defendant individually. Again, the defense requested no such assessments prior to jury deliberation. The question as asked did not compromise the rights of any defendant.

■ The final alleged error in the charge is the court's instruction that, under Louisiana law, a person may lawfully resist an otherwise unlawful arrest. This charge is supposedly in error because there is no "federal constitutional right to resist an unlawful arrest." The defense's argument is wholly beside the point for the simple reason that Mr. Fagot was not charged with resisting arrest in violation of the Federal constitution, but rather in violation of an ordinance of the city of Kenner. Under the law of Louisiana, the court's instruction was accurate and appropriate. LSA–R.S. § 14:108; *City of Monroe v. Ducas,* 1943, 203 La. 974, 14 So.2d 781.

■ The defense next urges that a new trial be granted because the jury verdict was against the weight of the evidence and because the award of damages was excessive. Alternatively, the defense argues that the court should impose a remittitur, the plaintiff's rejection of which should be ground for a new trial. These arguments are without merit. The defense requested a jury in this action. In light of the evidence and the nature of the alleged wrong, it cannot be said that either the verdict or the award of damages was beyond reason.

The final three grounds offered in support of the defense's motion for a new trial involve the conduct of the jury on voir dire and during deliberations.

First, the defendants assert that they were prejudiced by the failure of juror Bobby Davis to disclose that he had been discharged from the Franklinton Police Force, according to an affidavit by its chief, "as a result of his bad attitude." On voir dire, Mr. Davis did disclose his prior employment as a police officer, and that this employment lasted only six months. (Transcript, 36.) When asked to respond in the affirmative if any juror thought previous service with a police agency would affect his judgment in the case, Mr. Davis made no response. The defense did not ask the court to question any juror further with respect to prior service with a police agency, or the reasons for the termination of such service. The affidavit of Chief Miller is insufficient to establish facts proving either that Mr. Davis intentionally suppressed information or was being untruthful in denying that his prior police service would affect his judgment.

Second, the defendants assert that they were prejudiced by the court's failure to pose a question concerning the jurors' prior arrest records that had been requested by the defendants in their written pre-trial requests. On investigation after trial, the defense discovered that juror Hermann had been charged in 1976 with operating a vehicle in a reckless or negligent manner, and that alternate juror Tonguis had been charged in 1965 with assault and in 1977 with two counts of driving without a license.

Because the question of prior arrests was not asked, it cannot be said that either juror suppressed information. The issue is whether the court's failure to elicit information of these arrests so prejudiced the defendants that a new trial should now be ordered. A showing of prior arrests with respect to traffic violations does not demonstrate that the defendants were unfairly prejudiced by the court's failure to inquire as to arrests. Juror Tonguis' arrest for assault is more troublesome, although that charge is now 12 years old. A new trial will not be ordered because of Mr. Tonguis' undisclosed assault arrest, however, because Mr. Tonguis, as alternate juror, did not participate in the jury's deliberations. His attitude, even if biased, did not infect jury deliberations. A new trial will not be ordered for failure to ask requested voir dire questions absent a showing of prejudice in the jury selection process. *United States v. Frick,* 5 Cir. 1973, 490 F.2d 666; *United States v. Jackson,* 5 Cir. 1971, 448 F.2d 539.

It should also be noted that, to safeguard the parties' rights, the court conducted a bench conference prior to concluding its voir dire examination, during which it invited both to submit any further questions. The defense requested at that time that the jury be questioned regarding its interests, if any, in American Home Assurance Company. The defense did not avail itself of this timely opportunity to raise the question of prior arrests.

Consequently, a new trial will not be ordered on the grounds either of Juror Davis' non-disclosure of the circumstances surrounding his termination of employment with the Franklinton Police Force, or the court's failure to question the jury with respect to prior arrests. Insofar as it rests on these grounds, the defendants' motion to question the jury is also denied.

The defendant Ciravola has submitted an affidavit indicating that, 15 minutes after the jury left the courtroom for deliberations, alternate juror Tonguis said to the defendant that the jury had already reached its decision. The defense argues that this establishes the possibility that the jury deliberated in whole or in part in the presence of the alternate juror, in violation of the defendants' rights. The defendants moved originally to question the jury regarding this possible misconduct; they have since substituted a motion to question only Mr. Tonguis. Given the seriousness of the charge and the plaintiff's assent, the court will permit a hearing on the question, including the questioning of Mr. Tonguis.

In sum, the defendants' motion to question Mr. Tonguis is GRANTED. Their motion to question the jury is DENIED in all respects, except as to Mr. Tonguis. Their motion for a new trial, or for a new trial for the plaintiff's failure to accept a remittitur, is in all respects DENIED, except that the court reserves judgment on the motion for a new trial based on alleged misconduct that infected the jury's deliberations.

### III.

█ The final post-trial motion facing the court is the plaintiff's motion for an award of attorney's fees under the Civil Rights Attorneys Fees Act of 1976, P.L. 94–559, 42 U.S.C.A. § 1988. Under P.L. 94–559:

> In any action or proceeding to enforce a provision of [section] . . . 1983 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

The plaintiff, having prevailed in this Section 1983 action, now seeks attorney's fees.

The Fifth Circuit has recently announced the standard to guide discretion in awarding attorney's fees under P.L. 94–559. In *Brown v. Culpepper*, 5 Cir. 1977, 559 F.2d 274, 277, the court said that a plaintiff in a civil rights action, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." No such special circumstances exist in this case.

The plaintiff has further submitted an itemized statement of work done and costs incurred revealing 71 hours of work performed before, during and after trial. At the requested rate of compensation, $75.00 per hour, the total award of attorney's fees to be assessed against the defendants thus far would be $5,325.00. The rate requested is reasonable under the factors set forth in *Rainey v. Jackson State College*, 5 Cir. 1977, 551 F.2d 672, 676, and in *Johnson v. Georgia Highway Express, Inc.*, 5 Cir. 1974, 488 F.2d 714.[2] Should the defendants within ten days of the filing of this opinion dispute any item of cost set forth in the plaintiff's statement, as appended to his "Supplemental Memorandum" of December 27, 1977, the matter shall be referred to a magistrate for a report and recommendations. Otherwise the accounting shall be deemed accurate.

A final ruling on the plaintiff's motion must await the hearing with respect to the defendants' motion for a new trial. However, should no new trial be required in this matter, the plaintiff's motion shall be GRANTED, and attorney's fees awarded in the sum of $5,325.00, plus the cost of reasonable services in connection with the motion for a new trial.

█

---

**2.** Most of the factors set forth in *Johnson* and *Rainey, supra,* are neutral with respect to the court's determination of proper attorney's fees in this case. This was an ordinary jury trial, no more or less difficult than the typical jury trial of serious issues genuinely in dispute. The court's award is thus based on its findings that the work time devoted to this cause by the plaintiff's counsel was reasonable, that the requested rate is customary for an attorney of counsel's experience in the city of New Orleans, and that counsel represented his client with skill and diligence throughout these proceedings. I am sensitive to and aware of the *Johnson* requirements, but it would be merely formulistic if I went down the list and mentioned each. A competent trial lawyer in New Orleans now charges rates for routine cases ranging up to $100 per hour. Seventy-five dollars ($75.00) per hour is well within the range of reason. Plaintiff's counsel is able and experienced; he was formerly a first Assistant United States Attorney. He is of excellent repute, prepared this case well, and tried it ably. He is worthy of the hire he sought.