Hubbard F. DAUGHDRILL

v.

**OCEAN DRILLING AND EXPLORATION COMPANY (ODECO), et al.**

Civ. A. No. 85–5559.

United States District Court, E.D. Louisiana.

March 25, 1987.

---

Patricia Murray, Murray Law Firm, New Orleans, La., for plaintiff.

Charles Talley, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Thomas J. Wagner, Wagner & Bagot, New Orleans, La., for defendants.

MENTZ, District Judge.

The Court has before it the motion of defendant, Ocean Drilling and Exploration Company (ODECO) for summary judgment against co-defendant, Trico Marine (Trico). The motion seeks to have judgment entered holding that Trico must defend, indemnify, and hold ODECO harmless from and against the claims and demands of the plaintiff, Hubbard Daughdrill.

## ORDER AND REASONS

This litigation arises from the damage claims of Hubbard F. Daughdrill, an employee of ODECO who was injured on December 4, 1984. The plaintiff was a toolpusher on the ODECO drilling rig OCEAN EXPLORER, and was allegedly injured during a crew change as he was being transferred from the OCEAN EXPLORER to the M/V AMERICAN RIVER, a crewboat owned and/or operated by Trico. Mr. Daughdrill contends he was injured when a personnel crane, located on the ODECO rig, dropped him during the transfer.

Trico and ODECO had entered into a "Master Service Contract," which, by its own terms, governs the entirety of the relationship between Trico and ODECO. The contract contains several attachments and schedules, all relating to the charter of the M/V AMERICAN RIVER. However, the portions of the contract at issue on this motion are contained in the main contract, which is a form contract prepared by ODECO. In pertinent part, the clauses forming this controversy are as follows:

(9) It is agreed and understood that it is in the best interest of the parties that certain risks of the enterprise in which they are engaged should be identified and allocated as between them. It is, therefore, the intent of this paragraph to provide for indemnity to the maximum extent permitted by law and to support such indemnity by liability insurance coverage to be furnished by the indemnitor.

Contractor [Trico] agrees to indemnify, defend and hold harmless Company [ODECO] from and against all liens and

claims for labor or material, and against any and all 'claims, demands, or actions for damages to persons and/or property (including, but not limited to claims, demands, or actions for bodily injury, illness, disease, death, loss of service, loss of society, maintenance, cure wages, or property), which may be sought against Company [including, but not limited to such claims, demands, or actions brought by Contractor's employees and agents and the employees and agents of its subcontractors; by way of illustration, but not by way of limitation, any person who is on Contractor's payroll and receives, has received, or is entitled to receive payment from Contractor in connection with any work performed or to be performed hereunder shall be the employee of Contractor for purposes of this Paragraph (9) ] incident to, arising out of, in connection with, or resulting from the activities of Contractor, its employees and agents or its subcontractors and their employees and agents, or in connection with the work to be done, services to be performed or material to be furnished under this Contract or under contracts referred to in Paragraph (1)(b) above, whether occasioned, brought about, or caused in whole or in part by the negligence of Company, its agents, employees, officers, directors, or subcontractors or otherwise, or by the unseaworthiness of any vessel owned, operated, or contracted by the Company or by any defective condition of any equipment of Company (whether or not existing prior to the date of this agreement), regardless of whether such negligence, unseaworthiness or defective condition be active or passive, primary or secondary.

The thrust of ODECO's arguments are that,

> (1) ODECO is entitled to indemnity from Trico;
> (2) ODECO is entitled to insurance coverage provided by TRICO; and
> (3) ODECO is entitled to attorneys' fees for Trico's failure to provide same.

Trico denies that the quoted provisions operate as ODECO insists they do, and, alternatively assert that such provisions would be against public policy.

▪ At the outset, the Court must determine whether the contract in question is governed by the General Maritime Law or the laws of the State of Louisiana. If the latter is the case, then indemnification provisions run afoul of the Louisiana Oilfield Indemnity Act, LSA–R.S. 9:2780 (LOIA). As a general rule, contracts relating to drilling operations on a fixed offshore platform are governed by the law of the adjacent state, pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. Under the LOIA, a drilling platform owner cannot enforce agreements to indemnify and defend the owner against its own negligence in connection with the injury of one of its employees. The general maritime law provides for no such absolute ban. It is thus essential as a threshold consideration for ODECO's motion that the contract be characterized as a "maritime" contract.

Maritime law is traditionally precluded from application except "where the subject matter of the controversy bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction." *Lefler v. ARCO*, 785 F.2d 1341 (5th Cir.1986), citing *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir.1985).

▪ While Trico concedes that the time charter of a vessel is a maritime contract, it argues that the Master Service Agreement is not. Trico suggest that the relationship between ODECO and Trico should be characterized as a "mixed contract," with the indemnity provisions being severable from the maritime portions, hence requiring the application of Louisiana law and the LOIA. Such an argument is without merit. The agreement between Trico and ODECO was to provide a boat for the transport of persons and goods across navigable waters, and as such is clearly maritime. *Hale v. Co-Mar Offshore Corp.*, 588 F.Supp. 1212 (W.D.La.1984). Further, there are no clearly separable elements of the contract, such as to occasion a division between the

maritime and non-maritime acts, as in *Home Insurance Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218 (W.D.La.1984). The fact that the Master Service Agreement is a form contract applicable to maritime and non-maritime contractors alike is of no moment. Obviously, a given phrase may be included in both a maritime and non-maritime contract, and the obligations flowing therefrom varying with the classification. Thus, the Court concludes that the contract at issue is wholly maritime, and maritime law shall govern the indemnity claim under the contract arising out of Daughdrill's accident.

### Indemnification

The question thus becomes whether, applying the general maritime law, the indemnification clause is operative. Trico argues that it is not, by virtue of the language of the contract, as well as the power of the Court to set aside such provisions as being unreasonable.

█ The provisions in question are indeed confusing. At the outset, the indemnity provision provides that the parties were attempting to designate that "certain risks ... be identified and allocated as between them." The clear import is that the parties are attempting to segregate the risks which may be occasioned. If ODECO had intended that Trico assume all risks of any kind whatsoever, that should have been made express. However, the paragraph must be read in its entirety in order to determine whether Daughdrill's accident is allocated to either ODECO or to Trico. To be valid, the indemnification provision must be express and specific. *Roberts v. Williams-McWilliams Co., Inc.*, 648 F.2d 255 (5th Cir.1981). The indemnification paragraph herein can be succinctly divided into two broad categories; claims covered and persons covered.

█ It is evident to the Court that the passage in question would operate to cover an employee of ODECO, such as the plaintiff. The provision clearly specifies that it covers *any* claim by "persons". Daughdrill is included in such a broad category. Trico makes much of the fact that ODECO

employees are not expressly mentioned, and that specific reference is made only to Trico employees. However, the example supplied in the bracketed portion of the provision in no uncertain terms states that it is merely illustrative and "inclusive" of those persons covered, and that such an example is not meant to limit the broader category which it succeeds and explains. A reference to basic grammatical construction further supports this view, for bracketed material is designed to be insightful only, and may be ignored from the context of the sentence without altering the meaning thereof.

However, the claims which are covered is a narrower class. Only those claims which are "incident to, arising out of, in connection with, or resulting from the activities" of Trico are covered. While such phrases may seem exhaustively detailed, they essentially embody the same notion. That is the claim by a party must be related to the operation of Trico for ODECO. In this regard, several cases are significant.

In *Lanasse v. Travelers Insurance Company*, 450 F.2d 580 (5th Cir.1971), the plaintiff was injured during a personnel transfer via crane from the rig to the vessel. Indemnification was not allowed, because the provision therein specified indemnification only in situations "directly or indirectly connected with the possession, management, navigation and operation" of the vessel. *Id.* at 583. A similar factual scenario was present in *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238 (5th Cir.1980), and the Lanasse holding was affirmed. In both cases, the contract language turned on the indemnitee's alleged liability as "owner" of the vessel. ODECO suggests that these holdings are inapplicable because the contract herein is far more broadly worded.

The contractual provisions in these previous cases are not synonymous with that in the case at bar. Indeed, the wording in the present contract is somewhat broader. However, use of more expansive terminology does not necessarily operate to require indemnification by including this incident within its ambit. In *Smith v. Tenneco Co.*,

*Inc.*, 803 F.2d 1386 (5th Cir.1986), the plaintiff was again injured during a personnel transfer via crane from the platform to the vessel. The Court found that the indemnity provision did not cover the incident, even though the wording was substantially broader than those in *Hobbs* and *Lanasse.* Significant to the case at bar, the contract in *Smith* provided for indemnification for "any claims" made by "any person" which "arises out of or is incident to performance hereunder." *Id.* at 1388, note 1. The Court found that the distinctions between the contracts was meaningless.

The present provision compels indemnification in situations relating to the activities of Trico. Trico's "activity" was the furnishing of a vessel. As such, while certainly phrased differently, the indemnification clause has the same operative effect as those in *Lanasse, Hobbs,* and *Smith.* In the context of discussing P & I coverage, the Court in *Lanasse* stated that

> There must be at least some causal operational relation between the vessel and the resulting injury. The line may be a wavy one between coverage and non-coverage ... where injury is done through non-vessel operations, the vessel must be more than the inert locale of injury." 450 F.2d at 584.

Whether such a causal link or relational basis exists between the injury and the operational functions of Trico is a factual inquiry unsuited for resolution on a motion for summary judgment.

While such a conclusion terminates the present inquiry into indemnification, certain issues remain which may reappear after a determination on the merits. Chiefly, the issue of punitive damages. While it may be premature to discuss indemnification of such damages prior to a determination that indemnification is to occur, or that punitive damages be awarded, the Court feels the issue is nevertheless appropriate for discussion at this point.

Recently, in an unpublished opinion, this Court held that P & I coverage would not be afforded where punitive damages were awarded, based upon an absence of such specifically enumerated coverage in the policy. *Smith v. Front Lawn Enterprises,* Civil Action No. 83–5147 (E.D.La. September 29, 1986). Judge Little recently faced the issue of the insurability for punitive damages in *Dubois v. Arkansas Valley Dredging Co. Inc.*, 651 F.Supp. 299 (W.D. La.1987). The Court held that coverage is not provided for conduct so heinous as to result in an award of punitive damages. Judge Little then elaborated his decision by declaring that, even if the policy provided for coverage in express terms, such a provision would be unenforceable as against public policy.

■ Punitive damages may be recovered "when a wrongdoer has acted willfully and with gross disregard for the plaintiff's rights." *See, e.g., Gore v. Turner,* 563 F.2d 159 (5th Cir.1977). The public policy purpose behind permitting such damages is to punish the defendant for egregious conduct, teaching him not to do it again, and to deter others from engaging in similar behavior. *In re Merry Shipping, Inc.*, 650 F.2d 622 (5th Cir.1981). To provide insurance coverage for such acts would avoid these purposes, as the defendant would merely be passing along the risk to his insurer, although some deterence may be provided via an increase in premiums. On the other hand, the inherent nature of a P & I policy is to spread the risk of liability among those similarly situated. Thus, it can be said that coverage for punitive damages in a P & I policy may foster the underlying public policy goals outlined above. For instance, if a shipowner commits a particular act which incurs liability for punitive damages, it may deter other shipowners in the club from engaging in that activity if they themselves are forced to bear a portion of the costs of such an award.

■ However, in the case at bar we are confronted with contractual indemnification. No clearer example of a situation which would subvert the purposes of awarding punitive damages can be imagined than to permit such indemnification. To require a party, without recompense, to shoulder the burden of egregious conduct by another and hence permit that other to

avoid punitive damage liability would make a mockery of the very concept. In situations where the defendant's conduct is so extreme as to merit an award of punitive damages, the cost of such must be placed upon the party responsible, and not transferred to a party innocent of any wrongdoing. Accordingly, this Court feels that, even if indemnification is allowed, liability for punitive damages will not be compensible.

■ Trico also asks this Court to avoid the entire indemnification provision on the basis of power conferred by the general maritime law to protect the economic "little guy," citing *Bisso v. Inland Waterways Corporation,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). A court may indeed have the power to render unenforceable a contractual provision which is as extreme as that in *Bisso.* However, such a step must be taken with the greatest caution, for parties in a maritime contract are also free to agree as they will. A contract of adhesion is a classic example of such a circumstance where a court may step in to reform the agreement, but such a determination requires far greater considerations than those herein present. Thus, assuming such a power exists, this is not a case calling for its application.

### Insurance Coverage

■ In addition to a request for summary judgment on the issue of indemnification, ODECO also asks for a judgment declaring that it is entitled to insurance coverage provided by Trico. Article 8(g) of the Master Service Contract between the parties states, in brief, that Trico should maintain insurance coverage, waive subrogation against ODECO, and name ODECO as an additional insured. However, Article 8(c) dictates that such insurance need only "specifically cover the contractual liabilities and indemnities herein assumed by [Trico]."

First, Trico correctly notes that the comprehensive general liability insurance provision is left blank in terms of limits. Thus, there can be no such requirement. Further, the provision requires insurance coverage only for the responsibilities elsewhere assumed by Trico. Since this Court has already ascertained that indemnification is not owed for certain damages and may not be required in certain situations, a determination that insurance coverage is required to be furnished to ODECO is not appropriate. Quite simply, Trico is only required to provide insurance, and name ODECO as an additional insured, for whatever liabilities Trico may ultimately incur.

Trico is required to obtain insurance coverage for its own potential liabilities, not those of ODECO. A contrary holding would make Trico the insurer of ODECO, not the contractor. Such an absurd construction runs contrary to the language of the contract and could scarcely have been intended by the parties. Further, a party may not recover from an insurer the indemnification which it cannot obtain from an insured party. *Babineaux v. McBroom Rig Building Service, Inc.,* 806 F.2d 1282 (5th Cir.1987).

### Attorneys' Fees

Since the Court has ascertained that summary judgment is not appropriate in this matter, it is axiomatic that ODECO is not entitled to attorneys' fees. In any event, before indemnification is permitted, a determination must be reached as to the relational basis between the plaintiff's injuries and Trico's activities. Thus, ODECO's request is meritless.

For the reasons contained herein, the Court feels that ODECO's motion for summary judgment is ill-founded and accordingly, is DENIED.