516 So.2d 1168 (1987)
John H. CREECH & Denice S. Creech, Plaintiffs,
v.
AETNA CASUALTY & SURETY COMPANY, Curtis R. Hawkins, Hawkins Painters & Decorators, Inc., Martha H. Young & Allstate Insurance Company, Defendants.
No. 19065-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Writ Denied February 5, 1988.
*1169 Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Michael G. Latimer, Shreveport, for John H. Creech and Denice S. Creech.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, Shreveport, for Martha H. Young.
Burnett, Sutton & Walker by Bobby D. Sutton, Jr., Shreveport, for Curtis Ray Hawkins & Hawkins Painters & Decorators, Inc.
Nelson & Achee, Ltd. by James S. Denhollem, Shreveport, for Aetna Cas. & Sur. Co.
Before HALL, C.J., and JASPER E. JONES and SEXTON, JJ.
HALL, Chief Judge.
In this personal injury action seeking both compensatory and exemplary damages, the plaintiffs John H. and Denice S. Creech and defendants Curtis Ray Hawkins and Hawkins Painters & Decorators, Inc. appealed the trial court's granting of a motion for partial summary judgment in favor of Aetna Casualty & Surety Company denying insurance coverage for exemplary damages.
Plaintiffs filed suit against Martha H. Young; Curtis Ray Hawkins (Hawkins); Hawkins Painters & Decorators, Inc. (Hawkins Painters); Aetna Casualty & Surety Co. (Aetna), Hawkins Painters' liability insurer; and Allstate Insurance Company, plaintiffs' uninsured motorist carrier. Plaintiffs allege that John H. Creech was seriously injured and permanently disabled when Martha H. Young, daughter of Curtis Ray Hawkins, drove her vehicle while intoxicated in a wanton and reckless manner head-on into the vehicle driven by him. Plaintiffs seek to recover, among other damages, exemplary damages based upon LSA-C.C. Art. 2315.4. Plaintiffs allege that Mr. Hawkins and Hawkins Painters are vicariously liable since Martha Young was driving the vehicle owned by Hawkins Painters in the course and scope of employment with Hawkins Painters and with the permission of Mr. Hawkins. The plaintiffs *1170 also allege that Mr. Hawkins was individually negligent and is liable since he provided the automobile to Ms. Young and knew of her abuse of alcohol and drugs.
Aetna provided liability insurance coverage on the vehicle involved in the accident driven by Ms. Young under two insurance policies, a business automobile policy and an excess indemnity umbrella policy issued to Hawkins Painters as named insured.
Aetna filed a motion for partial summary judgment in the trial court contending that plaintiffs were not entitled to recover exemplary damages from the insurer under its policies of insurance issued and in effect on the date of the accident. The court sustained Aetna's motion for partial summary judgment, concluding that Aetna's policies did not provide coverage for exemplary damages. The court stated:
"By definition, punitive damages go beyond compensation for bodily injury. [LSA-C.C. Art. 2315.4] allowing `exemplary damages' [goes] beyond compensatory damages for bodily injury or personal injury contemplated by the policies."
The plaintiffs' demands against the insurance company for exemplary damages were rejected.
Plaintiffs and also defendants Hawkins and Hawkins Painters appealed, contending that the trial court erred in granting a partial summary judgment to Aetna and in concluding that exemplary damages were not covered under the provisions of the insured's liability policy.[1] Finding this specification of error to have merit, we reverse.
LSA-C.C. Art. 2315.4 was enacted by Act 511 of 1984 as Article 2315.1, was redesignated as Article 2315.2, and was redesignated in 1986 as Article 2315.4.[2] The article provides:
"In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries."
Aetna contends that the language of the policies does not cover "exemplary damages" and that insurance coverage for exemplary damages would violate the public policy of Louisiana.[3] Appellants argue that the policies provide for payment of all damages, whether compensatory or exemplary, and that there is no public policy which precludes insurance coverage for exemplary damages.
Thus, the issues are: (1) Do the liability policies provide coverage for exemplary damages awarded under LSA-C.C. Art. 2315.4, and (2) If so, does Louisiana public policy preclude such coverage. These issues have never been decided by a state court in Louisiana where exemplary or punitive damages have not historically been available, but the issues have been presented to and decided by the courts of many other states. Most courts have rejected the contention that the usual language of liability insurance policies does not provide coverage for exemplary or punitive damages. The majority of courts of other states have also rejected the contention that such insurance coverage violates public policy, although there is substantial authority to the contrary. See Annot., 16 A.L.R. 4th 11 (1982); Bolin, Enter Exemplary Damages, 32 La.Bar Journal 216 (1984). We are in accord with the majority view on both issues and hold that (1) the policies provide coverage of exemplary *1171 damages, and (2) public policy does not prohibit insurance coverage for exemplary damages.
THE INSURANCE POLICIES ISSUED BY AETNA PROVIDE COVERAGE FOR EXEMPLARY DAMAGES.
The business automobile policy provides in pertinent part:
"Part IVLiability Insurance.
A. WE WILL PAY.
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (emphasis added)
The excess indemnity (umbrella) policy provides in pertinent part:
"Section 2. INSURING AGREEMENTS
2.1 COVERAGE. The Company will indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of

A. Personal injury,

B. Property Damage, or
C. Advertising Offense
to which this policy applies, caused by an occurrence anywhere in the world, provided that: ..." (Emphasis added)
In the policies the insurer promises to pay all sums or indemnify for ultimate net loss which the insured legally must pay or shall become legally obligated to pay as damages because of bodily injury or property damage. There is no doubt that the exemplary damages contemplated by LSA-C.C. Art. 2315.4 are awarded because of injuries. "Injuries" is a predicate for the article to become applicable. If there is no injury then no exemplary damages may be awarded. If exemplary damages are due because of injury caused by the conduct described in the Article, then the insured is legally obligated to pay them.
There is no language in the policies distinguishing between compensatory and exemplary damages. Neither of Aetna's policies contains an exclusion of exemplary or punitive damages (see Part IV, Section C, Exclusions of the Business Automobile Policy and Section 2, Part 2.2, Exclusions of the Excess Indemnity (Umbrella) Policy).
A majority of the courts of other states which have considered the issue hold that insurance policies with similar language afford coverage for exemplary damages.[4] Most policies contain such language as the obligation to pay "all sums ... the insured shall become legally obligated to pay" or to pay "damages for bodily injury or property damage for which the law holds you responsible" without specifically excluding exemplary damages. The courts reason that such language is broad enough to include *1172 exemplary damages and further that the average premium paying insured contemplates protection against claims of any character not intentionally inflicted. The insurer designed the policy in question. As stated in Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979), "It is settled jurisprudence that policy language is to be read broadly in favor of coverage, Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); Craft v. Trahan, 351 So.2d 277 (La.App. 3rd Cir. 1977), and that ambiguities are to be construed against the insurer. Kendrick v. Mason, supra; Ory v. Louisiana and Southern Life Insurance Co., 352 So.2d 308 (La.App. 4th Cir.1977)." Even if the language was ambiguous it should be construed toward coverage. Aetna could have changed the policy language. The company could easily have provided for exclusion. Since Aetna specified the terms of the contract it is bound by them.
Some recent decisions of federal district courts in Louisiana have held that liability insurance policies do not provide coverage for punitive damages awarded under maritime law. Daughdrill v. Ocean Drilling and Exploration Co., 665 F.Supp. 477 (E.D.La.1987); Dubois v. Arkansas Valley Dredging, Inc., 651 F.Supp. 299 (W.D.La. 1987); Smith v. Front Lawn Enterprises, Inc., No. 83-5147 (E.D.La. September 29, 1986). But see and compare Fagot v. Ciravola, 445 F.Supp. 342 (E.D.La.1978). While authoritative, we do not regard those decisions as controlling under Louisiana law, and we reach a contrary result.
We hold that the provisions of the liability insurance policies issued by Aetna provide coverage for exemplary damages awarded under LSA-C.C. Art. 2315.4.
INSURANCE COVERAGE OF EXEMPLARY DAMAGES IS NOT AGAINST PUBLIC POLICY.
The contract of insurance, like any other agreement, is the law between the parties. Wiley v. Louisiana & Southern Life Insurance Co., 302 So.2d 704 (La. App.3d Cir.1974) writ denied 305 So.2d 540 and 305 So.2d 541 (La.1975). The provisions of the insurance policy should be given effect except to the extent they conflict with law or public policy. O'Donnell v. Fidelity General Insurance Co., 344 So.2d 91 (La.App.2d Cir.1977).
Aetna contends that even if the policies provide coverage for exemplary damages this court should preclude coverage as void against public policy. Many courts have denied coverage.[5]
*1173 Aetna suggests that by allowing exemplary damages under LSA-C.C. Art. 2315.4, the legislature intended to punish and/or deter the drunken driver, and by allowing insurance coverage this deterrence would be eviscerated. While we agree with appellee that this article was enacted to deter drunk driving, it does not necessarily follow that insurance coverage for exemplary damages would be against public policy.
The leading case holding that public policy precludes insuring against punitive damages is Northwestern National Casualty Co. v. McNulty, cited in footnote 5, which involved punitive damages under Virginia and Florida law for the gross negligence of a drunken driver. The rationale of McNulty was that punitive damages are meant to punish and deter the wrongdoer and to allow these damages to be passed along to an insurance company would undermine the purpose of the law.
Leading cases taking the contrary view are Lazenby v. Universal Underwriters Insurance Co., Harrell v. Travelers Indemnity Co. and Hensley v. Erie Insurance Co., cited in footnote 4. Courts rejecting the public policy preclusion argument have recognized that a substantial distinction exists in degree of culpability between intentional acts and wantonly reckless acts such as drunk driving. Permitting insurance coverage for such acts will not likely increase the frequency of such acts any more than permitting insurance coverage for ordinary negligent acts increases their frequency. Wanton negligence is still negligence and from a public policy standpoint should not be precluded from insurance coverage. Permitting coverage does not automatically shift the burden of payment. The insurance company can charge the insured a premium for coverage of exemplary damages. To the extent that such damages exceed the policy limits, there is no shift in the payment of damages. Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him.
It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled "punitive". Fagot v. Ciravola, supra. Whether precluding insurance coverage of exemplary damages assessed against drunk drivers will have a greater deterrent effect on wrongdoing than holding their insurers liable as well is a matter better left to legislative investigation than judicial speculation.
As stated in Harrell v. Travelers Indemnity Co., cited in footnote 4:
"It has long been recognized that there is no empirical evidence that contracts of insurance to protect against liability for negligent conduct are invalid, as a matter of public policy, because of any `evil tendency' to make negligent conduct `more probable' or because there is any `substantial relationship' between the fact of insurance and such negligent conduct. Neither is there any such evidence that contracts of insurance to protect against liability for punitive damages have such an `evil tendency' to make reckless conduct `more probable' or that there is any `substantial relationship' between the fact of such insurance and such misconduct. Conversely, neither is there any such evidence that to invalidate insurance contract provisions to protect against liability for punitive damages on grounds of public policy would have any substantial `tendency' to make such conduct `less probable,' i.e., that to do so would have any `deterrent effect' whatever upon such conduct."
It has been said of public policy as a ground for invalidation by the courts of private contracts that "those two alliterative words are often used as if they had a magic quality and were self-explanatory..." and that for a court to undertake to invalidate private contracts upon the ground of "public policy" is to mount "a very unruly horse, and when you once get *1174 astride it you never know where it will carry you." Id. at 1016; 6A Corbin on Contracts 10, § 1375 (1962); 14 Williston on Contracts 7-8, § 1629 (3d ed. 1972).
Nowhere in LSA-C.C. Art. 2315.4 does the legislature prohibit insurance coverage of exemplary damages. The legislature is well aware that motorists are required to have automobile insurance and that these policies generally provide protection against claims of any character not intentionally inflicted. The legislature could easily have provided that no insurance coverage shall be allowed to cover exemplary damages, but did not do so.
There is more than one public policy. One such policy is that an insurance company which accepts a premium for covering all liability for damages should honor its obligation. We have already mentioned the policy that favors coverage, both for the benefit of the insured and the injured person. See LSA-R.S. 22:655, last paragraph.
Public policy is better served by giving effect to the insurance contract rather than by creating an exclusion based on a judicial perception of public policy not expressed by the legislature. We hold that public policy does not preclude insurance coverage of exemplary damage awards under LSA-C.C. Art. 2315.4.
Aetna further contends that imposition of exemplary damages as to them would be a denial of due process. Aetna suggests that it is being penalized by the imposition of exemplary damages under LSA-C.C. Art. 2315.4 and that there is no limit to the amount of exemplary damages that may be awarded under the article. This argument has no merit since there is nothing fundamentally unfair and no penalty is being imposed by requiring a party to a contract to comply with its terms. The amount of damages awarded may be limited by judicial process and by the terms of the insurance contracts.
DECREE
For the reasons assigned, the judgment of the district court is reversed and set aside and the motion for partial summary judgment is overruled. The case is remanded to the district court for further proceedings in accordance with law. Costs of this appeal are assessed to appellee.
Reversed and remanded.
SEXTON, J., additionally concurs with written reasons.
SEXTON, Judge, additionally concurring.
The concept of exemplary damages is strongly adverse to the civil law in general, and the law of Louisiana in particular. 12 F. Stone, Louisiana Civil Law Treatise § 12 (1977). Thus, on first impression an observer is likely to assume that the legislature's only purpose in enacting LSA-C.C. Art. 2315.4 was to penalize an intoxicated driver who causes personal injury. But if so, why didn't the legislature preclude insurance coverage for such damages. They did not and we should not, as this opinion correctly points out.
Thus, I write not to indicate a difference of opinion regarding the rationale herein, but to emphasize that the statute, without exempting such damages from insurance coverage, serves no purpose other than to placate those who inveigh against the drinking driver and to reward the victim of the drinking driver (and his attorney) beyond the measure of that victim's actual damages. However, there are even more important negative aspects to the legislation, to include the legal problems created with respect to uninsured motorist coverage and settlements. The legislature should repeal the act or amend out insurance coverage at its first opportunity.
NOTES
[1] Defendant Martha H. Young did not appeal. Her counsel has advised this court that she sides with the plaintiffs on this issue only.
[2] At the same legislative session, the legislature enacted another article, Article 2315.1, redesignated in 1986 as Article 2315.3, providing that exemplary damages may be awarded if it is proved that the plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances.
[3] For purposes of the motion for partial summary judgment, the applicability of Article 2315.4 is assumed. However, the issues as to the intoxication of the driver and causation by a wanton or reckless disregard for the rights and safety of others while operating a motor vehicle have yet to be decided.
[4] Hensley v. Erie Insurance Co., 168 W.Va. 172, 283 S.E.2d 227 (1981) [Intoxicated driver]. Anthony v. Frith, 394 So.2d 867 (Miss.1981) [Intoxicated driver], Michael v. Cole, 122 Ariz. 450, 595 P.2d 995 (1979) [automobile accident]. Price v. Hartford Accident & Indemnity Co., 108 Ariz. 485, 502 P.2d 522 (1972) [Reckless driver engaged in a drag race]. First National Bank of St. Mary's v. Fidelity & Deposit Co., 283 Md. 228, 389 A.2d 359 (1978) [Declaratory judgment sought by insured bank for a determination that its liability insurer should have been obligated to defend the bank in a prior malicious prosecution action and pay exemplary damages awarded therein]. Harrell v. Travelers Indemnity Co., 279 Or. 199, 567 P.2d 1013 (1977) [Reckless Driver]. Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co., 95 Idaho 501, 511 P.2d 783 (1973) [Intoxicated driver]. Dairyland County Mutual Insurance Co. v. Wallgren, 477 S.W.2d 341 (Tex.Civ.App.1972) [Grossly negligent operation of an automobile]. Scott v. Instant Parking Inc., 105 Ill.App.2d 133, 245 N.E.2d 124 (1969) [General liability policy]. Lazenby v. Universal Underwriters Insurance Co., 214 Tenn. 639, 383 S.W.2d 1 (1964) [Intoxicated driver]. Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908 (1965) [automobile accident]. Ridgway v. Gulf Life Insurance Co., 578 F.2d 1026 (5th Cir.1978) [Texas law]. Travelers Insurance Co. v. Wilson, 261 So.2d 545 (Fla. 4th Dist.Ct.App.1972) [vicarious liability]. American Fidelity & Casualty Co. v. Werfel, 231 Ala. 285, 164 So. 383 (1935). Southern Farm Bureau Casualty Insurance Co. v. Daniel, 246 Ark. 849, 440 S.W.2d 582 (1969). Continental Insurance Cos. v. Hancock, 507 S.W.2d 146 (Ct. of App.Ky 1973). Cedar Rapids v. Northwestern National Insurance Co. of Milwaukee, Wisconsin, 304 N.W.2d 228 (Iowa 1981). Morrell v. LaLonde, 45 R.I. 112, 120 A. 435 (1923). Concord General Mutual Insurance Co. v. Hills, 345 F.Supp. 1090 (S.D.Maine 1972).
[5] These authorities may be divided into four categories:

1. The language of the policy does not provide coverage: Smith v. Front Lawn Enterprises, Inc., No. 83-5147 (E.D.La. September 29, 1986); California State Automobile Association Inter-Insurance Bureau v. Carter, 164 Cal.App.3d 257, 210 Cal.Rptr. 140 (5th Dist.1985) construed statutory language of uninsured motorist provision and policy coverage in the same manner;
2. Public policy precludes coverage: Daughdrill v. Ocean Drilling and Exploration Co., 665 F.Supp. 477 (E.D.La.1987); Dubois v. Arkansas Valley Dredging, 651 F.Supp. 299 (W.D.La.1987); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962) drunk driving case utilizing Florida and Virginia law; American Surety Co. of New York v. Gold, 375 F.2d 523 (10th Cir.1966) Kansas law; Ford Motor Co. v. Home Insurance Co., 116 Cal.App.3d 374, 172 Cal.Rptr. 59 (2nd Dist.1981); City Products Corp. v. Globe Indemnity Co., 88 Cal.App.3d 31, 151 Cal.Rptr. 494 (2nd Dist.1979); U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061 (Fla.1983) public policy precludes coverage of one's own wrongful conduct but not one vicariously liable; Nicholson v. American Fire and Casualty Insurance Co., 177 So.2d 52 (Fla. 2nd Dist.Ct.App. 1965); Beaver v. Country Mutual Insurance Co., 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058 (5th Dist. 1981) public policy precludes coverage for one's own misconduct; Variety Farms, Inc. v. New Jersey Manufacturers Insurance Co., 172 N.J.Super. 10, 410 A.2d 696 (1980); Hartford Accident and Indemnity Co. v. Hempstead, 48 N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E. 2d 737 (1979); Universal Indemnity Insurance Co. v. Tenery, 96 Colo. 10, 39 P.2d 776 (1934);
3. Policy language provides coverage but public policy precludes coverage: Dayton Hudson Corp. v. American Mutual Liability Insurance Co., 621 P.2d 1155 (Okla.1980); court recognized exception to allow coverage for one vicariously liable;
4. Policy language does not provide coverage and public policy precludes coverage: Guardianship of Estate of Smith v. Merchant's Mutual Bonding Co., 211 Kan. 397, 507 P.2d 189 (1973) bond does not cover punitive damages without an express statutory provision and public policy precludes coverage; Crull v. Gleb, 382 S.W.2d 17 (Mo.App.1964); Lo Rocco v. N.J. Manufacturers Indemnity Insurance Co., 197 A.2d 591 (N.J. 1964); Esmond v. Liscio, 209 Pa.Super. 200, 224 A.2d 793 (1966); intentional tort excluded from coverage.