526 So.2d 1253 (1988)
Randy LOUVIERE and Gale Louviere, Plaintiffs-Respondents,
v.
Nathan O. BYERS and State Farm Mutual Automobile Insurance Company, Defendants-Relators.
No. W87-1266.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Writ Denied June 2, 1988.
*1254 Bernard S. Smith, Lafayette, for defendants-relators.
Miller & Miller, Jack D. Miller, Crowley, Martin, Taulbee & Rowe, Terry Rowe, Lafayette, for plaintiffs-respondents.
Before FORET and LABORDE, JJ., and REGGIE, J. Pro Tem.[*]
LABORDE, Judge.
Defendant-relator, State Farm Mutual Automobile Insurance Company (State Farm), seeks supervisory relief from an order of the Sixteenth Judicial District Court, the Honorable Robert M. Fleming presiding, denying the relator's exceptions of no right/no cause of action and/or alternatively relator's motion for summary judgment. We granted writs and stayed the suit. Upon reflection, and much consternation, we conclude that the trial court acted correctly and remand the case for further proceedings consistent with this opinion.

FACTS
This case arises out of an automobile accident that occurred on November 4, 1986. The plaintiffs, Randy and Gale Louviere, sued Mr. Nathan Byers and his insurer, State Farm. Plaintiffs demand damages for medical expenses, mental and physical pain and suffering, economic losses such as wage losses and loss of earning capacity, and exemplary or punitive damages. The amount of compensatory damages sought, that being all items with the exception of the exemplary damages, is $50,000.00. The exemplary damages sought are $100,000.00.
The statutory basis for the exemplary damages sought is La.C.C. art. 2315.4, which allows exemplary damages for a defendant's wanton and reckless conduct whose intoxication, while operating an automobile, is a cause in fact of the injuries. It is alleged that Mr. Byers was intoxicated while driving, and that the intoxication was a cause in fact of the accident.
The relator filed exceptions of no cause and/or right of action and, alternatively, a motion for summary judgment on the ground that State Farm provided no coverage for a claim of exemplary damages. The trial court overruled the exceptions and denied the motion for summary judgment. From this judgment the relator seeks supervisory relief.

*1255 SUPERVISORY RELIEF
The denial of a motion for summary judgment is an interlocutory judgment which is not subject to appeal. La.C.C.P. art. 968. Thus, the only remedy is to request the appellate court to exercise its supervisory jurisdiction. Batson v. Time Inc., 298 So.2d 100 (La.App. 1st Cir.1974).
ON THE MERITS
La.C.C. art. 2315.4 was added by Act 511, § 1 of the 1984 legislature. It reads:
"In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
The applicable part of relator's insurance policy states:
"We will:
1. pay damages which an insured becomes legally liable to pay because of:
a. bodily injury to others...."
The policy of Louisiana, as a Civil Law jurisdiction, has been to reject punitive damages without specific authority. Now, however, there is a Codal exception making an intoxicated defendant liable for such damages. As the trial court noted, Louisiana courts have historically liberally construed coverage clauses in insurance contracts to uphold coverage of the policy. We must decide if this policy, which does not expressly exclude punitive or exemplary damages, covers those damages.
Two arguments are advanced by the relator to defeat punitive damages liability. The first argument is that the policy does not encompass punitive damages, but only compensatory damages. The second argument assumes, arguendo, that the policy language covers punitive damages, but that that part of the policy is void as it is against public policy for one to be insured against punitive damages. Other issues that arise because of punitive damages include whether the insurer has a duty to defend the insured above and beyond the compensatory damages, and whether the insured should be advised to retain separate counsel with respect to the punitive damage claim.
Relator's arguments are identical to the ones rejected in Creech v. Aetna Casualty & Surety Company, 516 So.2d 1168 (La.App. 2d Cir.1987). There, liability and excess (umbrella) insurance clauses were examined. The language in the liability policy provided in pertinent part:
"A. WE WILL PAY.
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (emphasis added)
The excess indemnity policy provided in pertinent part:
"Section 2. INSURING AGREEMENTS
2.1 COVERAGE. The Company will indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of

A. Personal injury,

B. Property Damage, or
C. Advertising Offense
to which this policy applies, caused by an occurrence anywhere in the world, provided that: ...." (Emphasis added)
We detect no meaningful distinction between the phraseology of the Creech policies and the policy in the case sub judice. The policies provide that the insurer will pay "sums" or "damages" which the insured becomes legally liable to pay because of bodily injury. As explained in Creech, "injuries" (along with intoxication) is a condition predicate for exemplary damages under La.C.C. art. 2315.4. There is nothing in the policy excluding exemplary damages the policy states "We will: 1. pay damages...." Applying the well settled jurisprudential rule that policy language be read broadly in favor of coverage, Craft v. Trahan, 351 So.2d 277 (La.App. 3d Cir. *1256 1977), we find the policy language "broad enough to include exemplary damages." Creech, 516 So.2d at 1171-72. State Farm drafted the terms of the insurance contract; so it is bound to the provisions unless public policy is offended.[1]
At the outset, we must recognize that federal courts sitting in Louisiana provide authority for relator's position as to public policy, but only persuasive authority. The lion's share of Louisiana federal court cases hold that liability insurance policies do not cover exemplary damage awards as they are contra bonos mores. The influence of Judge Minor Wisdom's opinion pervades recent federal cases[2] which cite the bellwether case of Northwestern National Casualty Company v. McNulty, 307 F.2d 432 (5th Cir.1962). Judge Wisdom reasoned that the public policy of "personal punishment" against the drunk driver overrides the policy of the plaintiff collecting the punitive damages from the insurer, which would presumably be much easier than collection against the insured. Id. at 441. Moreover, the insurer had done nothing wrong to be taxed with punitive damages, and if that were done, the various insurers of the country would have to pass along that cost to the public. The public would thus be punishing itself for the wrong of the drunk driver. Id. at 442. Finally, Judge Wisdom noted that the plaintiff is not being severely harmed since he has already been made whole with compensatory damages. Id. at 440. However, we, like our Brethern in the Second Circuit, reach a contrary result. See Creech, 516 So.2d at 1170.
One of the leading cases finding no public policy prohibition to insuring against exemplary damages is Lazenby v. Universal Underwriters Insurance Co., 214 Tenn. 639, 383 S.W.2d 1 (1964):
"Public policy is the present concept of public welfare or general good. State ex rel. Loser v. National Optical Stores, 189 Tenn. 433, 225 S.W.2d 263 (1949), Ford Motor Company v. Pace, 206 Tenn. 559, 335 S.W.2d 360 (1960). Public policy is practically synonymous with public good and unless the private contract is in terms of such a character as to tend to harm or injure the public good, public interest on public welfare or to violate the Constitution, laws, common or statutory, or judicial decisions of the State, it is not violative of public policy nor void on that account. Home Beneficial Association v. White, 180 Tenn. 585, 177 S.W. 2d 545 (1944).
The insurance contract in the case at bar is a private contract between defendant and their assured, Norman Frank Crutchfield, which when construed as written would be held to protect him against claims for both compensatory and punitive damages. Then to hold assured, as a matter of public policy, is not protected by the policy on a claim for punitive damages would have the effect to partially void the contract. We do not think such should be done except in a clear case, and the reasons advanced do not make such a clear case."
Further, as noted in Creech, 516 So.2d at 1173.
"Courts rejecting the public policy preclusion argument have recognized that a substantial distinction exists in degree of culpability between intentional acts and wantonly reckless acts such as drunk driving. Permitting insurance coverage for such acts will not likely increase the frequency of such acts any more than permitting insurance coverage for ordinary negligent acts increases their frequency.

*1257 Wanton negligence is still negligence and from a public policy standpoint should not be precluded from insurance coverage. Permitting coverage does not automatically shift the burden of payment. The insurance company can charge the insured a premium for coverage of exemplary damages. To the extent that such damages exceed the policy limits, there is no shift in the payment of damages. Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him.
It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled `punitive'. Fagot v. Ciravola, supra [445 F.Supp. 342 (E.D.La. 1978)]. Whether precluding insurance coverage of exemplary damages assessed against drunk drivers will have a greater deterrent effect on wrongdoing than holding their insurers liable as well is a matter better left to legislative investigation than judicial speculation."
We hold that public policy does not preclude insurance coverage of exemplary damages under La.C.C. art. 2315.4.
For the foregoing reasons, the judgment of the trial court overruling State Farm's exceptions and motion is affirmed. This suit is remanded to the trial court for further proceedings. Costs of this writ are taxed to relator, State Farm.
AFFIRMED AND REMANDED.
FORET, J., dissents and assigns reasons.
FORET, Judge, dissenting.
I respectfully dissent from the ruling of the majority which affirms the trial court's denial of relators' motion for summary judgment. I dissent for the reasons stated by Judge Wisdom in Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5 Cir.1962), and its progeny. This line of federal cases has held that it is against public policy for an insurer to provide coverage for punitive damages. Similar holdings can be found in the jurisprudence of other states. Further, the Louisiana Supreme Court denied supervisory writs in Stein v. State Farm Mutual Auto. Ins. Co., 477 So.2d 707 (La.1985), as to the trial court's decision that Louisiana public policy prohibits UM insurance coverage of punitive damages, the inference being that the trial court was correct in its decision.
While it appears that a few other states hold that it is not against public policy to insure against punitive damages, there are at least as many or more states which hold that it is against public policy. Obviously, I therefore disagree with the Creech case from the Louisiana Second Circuit. The logic of Judge Wisdom in McNulty seems to me to be irrefutable.
Additionally, I would note the anomaly of the legislation in question where it would allow a plaintiff punitive damages because of the intoxicated driver, whereas another plaintiff suffering the same injuries under the same circumstances, but whose defending driver was sober, could not recover punitive damages. It is difficult for me to understand why a plaintiff who is involved with a drunken driver should suddenly get a windfall which would be denied to a plaintiff whose offending driver was sober.
NOTES
[*] Honorable Edmund M. Reggie, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] La.C.C. art. 2315.4 was added by Acts 1984, No. 511, § 1. The record does not state when defendant Byers' insurance policy was issued or if and when it was renewed. Nevertheless, the accident occurred on November 4, 1986, more than two years after the enactment of La.C.C. art. 2315.4. No reason is advanced to explain why State Farm could not have expressly excluded exemplary damages from the policy coverage.
[2] Ging v. American Liberty Insurance Company, 423 F.2d 115 (5th Cir.1970); Commercial Union Insurance Company of New York v. Reichard, 404 F.2d 868 (5th Cir.1968); Daughdrill v. Ocean Drilling and Exploration Company, 665 F.Supp. 477 (E.D.La.1987); Dubois v. Arkansas Valley Dredging, Inc., 651 F.Supp. 299 (W.D.La.1987).