# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-1208 consolidated with 08-1001

QUINN L. DUCOTE, ET UX

VERSUS

UNION PACIFIC RAILROAD COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 218,842
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**REVERSED AND REMANDED.**

Elizabeth S. Hardy
Thomas & Hardy
2380 Lake Street
Lake Charles, LA 70601
Telephone: (337) 433-4903
COUNSEL FOR:
    Plaintiffs/Appellants - Quinn L. Ducote and Judy Ducote

John Edmund McElligott, Jr.
Kevin M. Dills
Davidson, Meaux, Sonnier & McElligott
P. O. Box 2908
Lafayette, LA 70502-2908
Telephone: (337) 237-1660
COUNSEL FOR:
    Defendant/Appellee - Union Pacific Railroad Company

**James D. "Buddy" Caldwell**
**Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**COUNSEL FOR:**
> **Defendant/Applicant - State of Louisiana, Thru The Department of Transportation and Development**

**Laurel I. White**
**Assistant Attorney General**
**P. O. Box 1710**
**Alexandria, LA 71309**
**Telephone:  (318) 487-5944**
**COUNSEL FOR:**
> **Defendant/Appellee - State of Louisiana, Thru The Department  of Transportation and Development**

**THIBODEAUX, Chief Judge.**

Plaintiffs-appellants, Quinn L. Ducote and Judy Ducote, assert that the trial court erred by granting a partial summary judgment in favor of the defendant, Union Pacific Railway Company (UP), and by denying the Ducotes' and Louisiana Department of Transportation and Development's (DOTD) motions to strike certain documents from the record. Defendant DOTD filed a separate writ application, claiming that the trial court erred in denying its motion to strike and in not granting its motion for summary judgment. These matters were consolidated. For the following reasons, we reverse the trial court's grant of partial summary judgment in favor of UP and its denial of the motions to strike. We affirm in a separate judgment the trial court's writ ruling that the Ducotes' amended petition does not state a cause of action against DOTD.

I.

## ISSUES

We shall consider whether the trial court: (1) erroneously denied the Ducotes' and DOTD's motions to strike certain unauthenticated documents; (2) based on preemption, erroneously granted UP's motion for partial summary judgment by relying on documents it held to be privileged; and, (3) erred by not granting the DOTD's motion for summary judgment.

II.

## FACTS

On November 21, 2003, Quinn Ducote was driving his vehicle on Sugar Mill Road in Rapides Parish, when, around 8 a.m., a UP train struck his vehicle. The railroad crossing in question had a railroad cross-buck and a warning sign. Ducote

sustained serious injuries in the accident and filed this suit against UP, the train's conductor and engineer, Rapides Parish, and the DOTD.

Through discovery, the Ducotes and UP sought various documents from the DOTD regarding the Sugar Mill crossing. The DOTD claimed privilege pursuant to 23 U.S.C. § 409. The Ducotes and UP filed motions to compel, and, after a hearing, the trial court ruled that the documents were privileged.

UP then filed a motion for partial summary judgment, arguing that federal law preempted the Ducotes' inadequate warning devices claim. UP alleged that the warning devices at the Sugar Mill crossing had been installed using federal funds, and, therefore, 49 U.S.C. § 20106 preempted all claims pertaining to the adequacy of those devices. To substantiate this, UP submitted unauthenticated documents that purported to establish that federal funds were used at the Sugar Mill crossing. UP also argued that the Ducotes "judicially confessed" the fact of federal funding by referencing federal funding in their petition. In addition, UP relied on the pronouncement of the trial court that the federal funding was involved in the project.

UP also relied heavily on the testimony of William Shrewsberry, the DOTD's custodian of documents pertaining to the Sugar Mill crossing. In response to the trial court's inquiry and over an objection of the DOTD's counsel, Shrewsberry testified, from the content of the documents the trial court ruled to be privileged, that the DOTD supervised a project number 737-04-13, of which Sugar Mill crossing was a part. Yet, Shrewsberry never testified, claiming privilege, that federal funds were used to install warning devices at this crossing.

Meanwhile, the DOTD filed a motion for summary judgment, claiming 23 U.S.C. § 409 prevented plaintiff's discovery of any evidence that would create a genuine issue of material fact as to the DOTD's involvement with the Sugar Mill

2

crossing. The DOTD also filed a motion to expand the protective order to include the information contained in the documents the trial court already ruled to be privileged. The DOTD also filed a corresponding motion to quash the UP's requests for admissions, asserting that to answer the requests would necessitate looking into the documents that already had been held privileged.

Finally, the Ducotes and DOTD filed motions to strike as inadmissible hearsay unauthenticated documents UP attached to its motion for partial summary judgment. UP did not deny that the documents were inadmissible hearsay, but argued that the trial court's admission and consideration of the documents were harmless because the trial court did not rely on these documents in its ruling. UP argued that these documents only confirmed the "undisputed fact" that federal funds were used at the Sugar Mill crossing. UP also argued that the "fact" of federal funding cannot be privileged.

After the trial court, relying on 23 U.S.C. § 409, denied the Ducotes' motion to compel production of documents in the DOTD's file, the Ducotes amended their petition so as to delete all allegations of the DOTD's negligence and liability. Then, the trial court denied the motions to strike it originally orally granted at the hearing, granted the UP's motion for partial summary judgment, denied the DOTD's motion to expand the protective order, and held the DOTD's motion to quash and the motion for summary judgment to be moot, reasoning that the Ducotes' amended petition failed to state a cause of action against DOTD.

In the written reasons for these decisions, the trial court explained that its original decision to hold DOTD's documents privileged was a correct one. Yet, the trial court went on to state that "the 409 privilege cannot be used to defeat the defense of preemption." Thus, it held that while the documents were privileged under

3

23 U.S.C. § 409, they were not privileged for the limited purpose of establishing preemption. The Ducotes appealed and the DOTD filed a petition for a supervisory writ, claiming the denial of its motion to strike and the lack of ruling on its motion for summary judgment were in error.

## III.

## STANDARD OF REVIEW

Appellate court reviews summary judgment de novo. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, *writ denied*, 97-1840 (La. 10/17/97), 701 So.2d 1327. The appellate courts' exercise of supervisory jurisdiction is within their plenary power. La.Const. art. 5, § 10. "Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the petitioner irreparable injury or an ordinary appeal does not afford an adequate remedy." *Borrel's, Inc. v. City of Marksville* 05-48, p. 1 (La.App. 3 Cir. 6/1/05), 904 So.2d 938, 939. Because the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken, the only practical remedy available is to request that the appellate court exercise its supervisory jurisdiction to review the propriety of this ruling. *Louviere v. Byers*, 526 So.2d 1253 (La.App. 3 Cir.), *writ denied*, 528 So.2d 153 (La.1988).

## IV.

## LAW AND DISCUSSION

### (1) Unauthenticated Hearsay Documents

Before a court may admit the evidence, there has to be evidence "sufficient to support a finding that the matter in question is what its proponent claims," i.e., the evidence has to be authenticated. La.Code Evid. art. 901. In its brief

4

to this court, UP admits that it "made no attempt to get DOTD to certify the documents" UP attached to its motion for partial summary judgment. UP explains this failure by stating that it knew the DOTD would assert 23 U.S.C. § 409 privilege.

Even if we agree that the trial did not rely on this evidence in its ruling, it is irrelevant. The authentication requirement is a condition precedent to the *admissibility*. It was an error for the trial court not to grant the DOTD's and the Ducotes' motions to strike the unauthenticated documents from the record.

## (2) Effect of Preemption on the 23 U.S.C. § 409 Privilege

To improve railroad crossings, Congress made federal funding available to the states by enacting 23 U.S.C. § 130. *Palacios v. Louisiana and Delta R.R. Inc.*, 98-2932 (La. 7/2/99), 740 So.2d 95. To receive these funds, a state must systematically perform surveys of the railroad crossings so as to identify those that require relocation or protective devices. *Id.*

To encourage the evaluation of railroad safety hazards, the U.S. legislature enacted 23 U.S.C. § 409 that reads as follows:

> [R]eports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

Once the trial court determines that the documents satisfy the requirements of 23 U.S.C. § 409 and are, thus, privileged, they remain privileged. *Gremillion v. Kansas City S. Ry. Co.*, 06-493 (La.App. 3 Cir. 12/6/06), 945 So.2d

5

819, *writ denied*, 07-222 (La. 3/23/07), 951 So.2d 1107. "[T]here is no exception to § 409 pertaining to the funding issue." *Id.* at 823. Thus, the trial court must first decide whether the document is within or without the scope of 23 U.S.C. § 409. *Id.* Once the trial court determines that the document is within the scope of 23 U.S.C. § 409, the document and its contents are privileged and cannot be used. *Id.* If the trial court determines that the document is without the scope of the 23 U.S.C. § 409, the document is not privileged and is not subject to a protective order. *Id.*

If certain conditions are met, 23 C.F.R. § 646.214(b)(3) and (4) require installation of particular warning devices at a railroad crossing. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732 (1993). When these regulations are applicable, state law claims regarding adequacy of the warning devices are preempted. *Id.* If the federal funds participated in the crossing improvement project, 23 C.F.R. § 646.214(b)(3) and (4) become applicable. *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467 (2000).

Yet, to establish preemption, it is not enough for a railway company to demonstrate simply that federal funds were used at a particular crossing. *Duncan v. Kansas City S. Ry. Co.*, 00-66 (La. 10/30/00), 773 So.2d 670. Rather, the railway company must present evidence that would lead to "an unequivocal conclusion that the signage" at a particular crossing was installed or replaced with the federal moneys. *Id.* at 680. Moreover, it is not enough to establish that federal funding was approved for a project of which a particular crossing was a part. *Easterwood*, 507 U.S. 658. For the preemption protection to apply, the device in question must also be a warning device. *Id.* Thus, installation of a motion detection circuitry with federal funds was insufficient to establish preemption. *Id.* Therefore, to establish

preemption, the railroad has to submit evidence that a particular operational warning device at a particular crossing was installed or replaced with federal funds.

Here, UP submitted no admissible evidence that federal funds was used at the Sugar Mill crossing. UP cannot rely on the statements of the trial judge because the judge is not a witness. Whatever judicial confession without personal knowledge is worth, it is irrelevant here because the Ducotes' amended petition has no allegation that federal money was used at the crossing. Insofar as Shrewsberry was directed to answer questions about the Sugar Mill crossing and to rely on the privileged documents in doing so over the objection of the DOTD's counsel, the testimony is privileged and inadmissible. There is no testimony in the record that suggests, without reliance on the content of the privileged documents, that federal money was used at the Sugar Mill crossing.

The trial court conducted an in camera review of all documents the DOTD claimed to be privileged. The trial court held a lengthy hearing during which the UP's attorney challenged the privileged status of every document in the DOTD's file. At the end of the hearing the trial court determined that all documents in question satisfied 23 U.S.C. § 409 and were privileged.

The trial court then did something this court explicitly ruled in *Gremillion* it ought not do, i.e., it created an exception to the 23 U.S.C. § 409 privilege so that UP could establish that the federal funds were used at the Sugar Mill crossing. 945 So.2d 819. The trial court's Reasons for Judgment leave no doubt that it is precisely what it did: 1) it reasserted that its grant of protective order over the DOTD's file was "correct in principle;" 2) it wrote that "the 409 privilege cannot be used to defeat the defense of preemption;" and, 3) it reasoned that there is an exception to 23 U.S.C. § 409 privilege because "the federal law specifically

7

include[s] a provision for preemption as an integral part" of the Federal Railroad Safety Act.

Contrary to the trial court's ruling, there is no exception to 23 U.S.C. § 409 privilege regarding the funding issue. The trial court cannot rule that the documents are privileged under 23 U.S.C. § 409 and, at the same time, assert that for the limited purpose of showing that federal funds were used, the documents are not privileged. Contrary to the UP's assertions that the fact of federal funding cannot be privileged, we specifically stated in *Gremillion* that there is no exception to the privilege regarding the funding issue. If the fact of federal funding flows from the privileged documents, this fact is privileged.

Finally, even if UP could establish that federal money was used at the Sugar Mill crossing, this would not have been sufficient to establish preemption of the Ducotes' inadequate warning devices claim. Mere fact that the Sugar Mill crossing was a part of the project number 737-04-13, for which federal funds were used, is not enough to establish preemption. Rather, UP has to demonstrate that the *warning* devices that were installed or replaced at the Sugar Mill crossing were operational at the time of the accident and were installed or replaced with federal funds.

Based on the considerations above, the trial court committed a reversible error.[1]

---

[1]In their brief to this court, the Ducotes argue that the 2007 amendments to 49 U.S.C. § 20106 significantly limit the railroads' preemption defense. The Ducotes maintain these amendments now require railroads to show compliance with the federal safety regulations before a court may rule that the plaintiff's state claim of inadequate warning devices is preempted. We do not consider this argument because the resolution of this case does not require us to do so.

**(3) The Trial Court's Ruling on the DOTD's Motion for Summary Judgment**

Although we think the better procedure would have been for the trial court to consider the DOTD's motion for summary judgment, the trial court did not err by declaring the motion moot. The trial court may, on its own motion, notice a failure to state a cause of action. La.Code Civ.P. art. 927(B). Moreover, an appellate court may not decide issues the trial court did not consider. *Gorham v. Mathieson Alkali Works, Inc.*, 27 So.2d 299 (La.1946).

Here, the Ducotes amended their petition and deleted all allegations of DOTD's liability or negligence, except that the DOTD knew the Sugar Mill crossing posed an unreasonable risk of harm. Thus, the amended petition contains no allegations that the State was responsible for the crossing or its condition. Therefore, the trial court committed no error in noticing the peremptory exception of no cause of action. Furthermore, because the trial court did not consider the DOTD's motion for summary judgment, it would not be appropriate for us to rule on it. Accordingly, the DOTD's writ, insofar as it asks us to grant a summary judgment, is denied. We, however, affirm the trial court's ruling which recognized *sua sponte* and granted an exception of no cause of action in favor of the DOTD.

V.

**CONCLUSION**

The trial court's grant of partial summary judgment and denial of motions to strike are reversed. We affirm in a separate judgment[2] the trial court's ruling that the Ducotes' amended petition does not state a cause of action against DOTD. Costs of this appeal are assessed to Union Pacific Railroad Company.

**REVERSED AND REMANDED.**

---

[2]*See Ducote v. Union Pacific R.R. Co., et al.*, 08-1001 (La.App. 3 Cir. __/__ /09), __ So.2d __.