# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-0005

GLYNN P. GREMILLION

VERSUS

ANITA GRIMES GREMILLION

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2004-6979 A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, J. David Painter, James T. Genovese, and Shannon J. Gremillion, Judges.


**AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.**


Amy, J., concurs in part, dissents in part, and assigns written reasons.

Gremillion, J., concurs in part and dissents in part for the reasons assigned by Amy, J.


Kenneth A. Doggett
Attorney at Law
P. O. Box 13498
Alexandria, LA 71315-3498
(318) 487-4251
COUNSEL FOR PLAINTIFF/APPELLEE:
    Glynn P. Gremillion

**Alfred B. Shapiro**
**Shapiro & Shapiro, L.L.C.**
**1500 Lobdell Avenue, Suite B**
**Baton Rouge, LA 70806**
**(225) 928-4193**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Anita Grimes Gremillion**

PETERS, J.

This appeal in this continuing and acrimonious domestic dispute relates to issues arising from the community property division between Anita G. Gremillion[1] and her former husband, Glynn P. Gremillion. Mrs. Gremillion appeals the trial court's rejection of her claim for legal interest on an equalizing payment previously awarded to her in the community property division proceedings, as well as the trial court's award of general and special damages to Mr. Gremillion for damages to the family home caused by Mrs. Gremillion and damages he sustained when Mrs. Gremillion had him arrested for the theft of a community-owned automobile. Mr. Gremillion answered the appeal, seeking an increase in the general damage award. For the following reasons, we affirm in part, amend in part, and reverse in part.

## DISCUSSION OF THE RECORD

The litigants were married in Leesville, Louisiana, on July 8, 1995, and, thereafter, established their marital domicile in Simmesport, Avoyelles Parish. They were divorced on June 13, 2005, and the trial court executed a judgment on December 11, 2006, addressing the property issues between them. In the judgment, and among other findings, the trial court determined that Mrs. Gremillion had a monetary community interest in six items of property,[2] and valued her interest at $100,489.50. The judgment further awarded Mrs. Gremillion a Mercedes Benz automobile and assigned the indebtedness on the vehicle to her. The trial court judgment satisfied neither party and both appealed various aspects of the judgment. On appeal, this court modified the trial court and remanded the matter to the trial court for further

---

[1]Anita G. Gremillion remarried after her divorce from Glynn P. Gremillion, but for purposes of clarity and consistency we will continue to refer to her as Mrs. Gremillion.

[2]The judgment identified these items of property as the Gremillion Feed Mill, a motorcycle, cost reimbursement for Mr. Gremillion's home, a Valic account, a four-wheeler, and Mr. Gremillion's personal checking account.

proceedings. *Gremillion v. Gremillion*, 07-492 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228. Concerning the issues now before us, this court reduced the value of Mrs. Gremillion's interest in the community property to $98,845.70.

On April 22, 2009, Mrs. Gremillion seized, by writ of fieri facias, Mr. Gremillion's undivided interest in three tracts of immovable property located in Avoyelles Parish.[3] Mr. Gremillion responded to this action by filing, on May 15, 2009, a petition for injunctive relief and for damages. The trial court ultimately issued a temporary restraining order enjoining the Avoyelles Parish Sheriff from proceeding with the public sale of the seized property, and, after additional filings and procedural maneuvering by the parties, the issues raised by Mr. Gremillion proceeded to trial on August 13, 2009.

Upon completion of the evidentiary phase of the trial, the trial court issued written reasons for judgment rejecting Mrs. Gremillion's claim for legal interest on the amount recognized as the value of her community interest and awarding Mr. Gremillion $74,564.95 in general and special damages. The trial court executed a written judgment to this effect on September 3, 2009.

The issue regarding the sale of the immovable property seized by Mrs. Gremillion was not addressed until a hearing held on September 25, 2009. This hearing resulted in an October 1, 2009 judgment enjoining the Avoyelles Parish Sheriff from proceeding with the sale of Mr. Gremillion's immovable property pending further orders of the trial court.[4]

_____

[3]Mrs. Gremillion had previously filed a motion for a judgment debtor examination, a petition to garnish funds on deposit in the Simmesport State Bank, and a writ of fieri facias seeking to seize two motorcycles and two four-wheelers, but the record contains nothing to suggest the disposition of these filings.

[4]The public sale had, by this time, been rescheduled for October 7, 2009.

2

In separate appeal motions, Mrs. Gremillion appealed both the September 3 and October 1 judgments. In her single specification of error, Mrs. Gremillion asserted that the trial court "erred in denying interest on the Judgment for the equalizing payment awarded to Mrs. Gremillion in the community property partition and erred in enjoining the seizure and sale of the property to execute that judgment. It further erred in awarding damages to Mr. Gremillion." In his answer to the appeal, Mr. Gremillion seeks an increase in the damages awarded by the judgment of September 3, 2009.

**OPINION**

*Interest Issue*

In her first issue raised, Mrs. Gremillion argues that the trial court erred by finding that she was not entitled to legal interest on her prior money judgment in the December 11, 2006 judgment. She states that jurisprudence provides that judicial interest from the date of judgment is appropriate in cases where an equalizing payment is awarded in the division of community property, even in instances where the judgment is silent on the award. *See Reinhardt v. Reinhardt*, 99-723 (La. 10/19/99), 748 So.2d 423; *Manno v. Manno*, 01-2138 (La.App. 1 Cir. 10/2/02), 835 So.2d 649.

While we agree in principal with the holdings in *Reinhardt* and *Manno*, we find that both are distinguishable from the interest issue before us. In *Reinhardt*, the supreme court was not faced with a judgment silent as to interest. Instead, it was called upon to resolve the conflict among the appellate circuits as to when interest was to begin to run on a judgment. It concluded that interest was to run from date of

3

judgment and not date of filing. The court in *Manno*, amended the *judgment being appealed* to provide for an interest award.

In the matter before us, Mrs. Gremillion argues that she is entitled to an interest award, not on the judgment being appealed, but on a prior final judgment that was silent as to that issue. We rejected this argument in the recent case of *Glass v. Glass*, 08-1328 (La.App. 3 Cir. 4/1/09), 7 So.3d 118, *writ denied*, 09-988 (La. 6/19/09), 10 So.3d 743. Specifically, we held that once a judgment becomes final, no court is authorized to amend or modify its terms. *See* La.Code Civ.P. art. 1951; *Stevenson v. State Farm*, 624 So.2d 28 (La.App. 2 Cir. 1993).

We find no merit in this argument on the interest issue.

### Injunction Issue

Next, Mrs. Gremillion argues that the trial court erred in enjoining the sale of Mr. Gremillion's immovable property[5] without requiring Mr. Gremillion to post a security bond for the preliminary injunction. We agree.

In considering this issue, we first note that it is undisputed that Mrs. Gremillion has a money judgment against Mr. Gremillion for at least the difference between $98,845.70 and the total of the judgment rendered against her in the September 3, 2009 judgment. That judgment can be executed on by seizure and sale of Mr. Gremillion's immovable property pursuant to a writ of fieri facias. La.Code Civ.P. art. 2291. The grounds for enjoining such a sale are found in La.Code Civ.P. art.

---

[5]Mrs. Gremillion asserts that the trial court enjoined both the seizure and sale of the immovable property. However, an examination of the October 1, 2009 judgment reveals only that the trial court enjoined "the sale" of the immovable property pending "further orders of the court."

4

2298, and, of the four listed, only one has any potential to affect the matter before us,

[6] and that is Article 2298(2) which provides that the sale may be enjoined:

> When subsequent to the judgment payment has been made, or compensation has taken place against the judgment, or it has been otherwise extinguished. If the payment, compensation, or extinguishment is for a part of the judgment, the injunction shall be granted to that extent, and the execution shall continue for the amount of the excess.

Additionally, Comment (a) of Article 2298 provides that, "[t]he requirements of a bond and affidavit and the general procedure for issuing an injunction are set forth in Arts. 3601 through 3613, *infra*. Those provisions apply to all types of injunction, including those issued under this article." (Emphasis in original.) Louisiana Code of Civil Procedure Article 3610 provides that a "preliminary injunction *shall not* issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law." (Emphasis added.)

As applicable to this matter, La.Civ.Code art. 1893 provides that:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.

> In such a case, compensation extinguishes both obligations to the extent of the lesser amount.

> Delays of grace do not prevent compensation.

Additionally, as provided for in La.Civ.Code art. 1894, "[c]ompensation takes place regardless of the sources of the obligation," except in certain circumstances, none of which apply in the instant matter.

---

[6]The record contains no transcript of the hearing wherein the trial court granted the preliminary injunction. Thus, we can only speculate concerning the basis for the issuance of the preliminary injunction.

Prior to the September 3, 2009 judgment, Mr. Gremillion owed Mrs. Gremillion $98,845.70. Subsequent to that judgment, compensation took place by operation of law because of the $74,564.95 judgment in favor of Mr. Gremillion.[7] Still, Mr. Gremillion is indebted to Mrs. Gremillion and she is entitled to attempt to collect that amount. Accordingly, we find that the trial court erred in granting Mr. Gremillion a preliminary injunction without requiring him to furnish security as required by La.Code Civ.P. art. 3610. Thus, we find that the trial court's order enjoining the public sale was improperly granted.

Finally, Mrs. Gremillion asserts that the trial court erred in awarding Mr. Gremillion general and special damages. Conversely, Mr. Gremillion has answered her appeal and argues that the amount of damages awarded is insufficient.

In her initial argument, Mrs. Gremillion first addresses peremptory exceptions of res judicata and prescription she filed in the court below. However, the record is devoid of any indication that the exceptions were ever addressed and ruled upon by the trial court. Generally, a court of appeal will not consider an issue which is raised for the first time on appeal. *Stewart v. Livingston Parish Sch. Bd.*, 07-1881 (La.App. 1 Cir. 5/2/08), 991 So.2d 469; Uniform Rules—Courts of Appeal, Rule 1-3. As there is no judgment or order denying the exceptions in the record, this issue is not properly before us on appeal. Therefore, we will not address Mrs. Gremillion's argument on the exceptions.

---

[7]We note that the amount now owed by Mr. Gremillion to Mrs. Gremillion is less than the difference between the amount awarded her and $74,564.95 because Mr. Gremillion's award earned legal interest from date of judicial demand.

***Damages Associated with Mercedes***

Turning to the damage issues, Mr. Gremillion presented evidence at trial addressing two separate factual scenarios for which he sought damages. The first involves the Mercedes automobile awarded to Mrs. Gremillion in the December 11, 2006 community property judgment.

The basic facts with regard to this issue are not in dispute. Before their divorce, the litigants had acquired a Mercedes automobile and had financed the purchase through Mercedes-Benz Financial, and the vehicle was titled in Mr. Gremillion's name. The trial court took testimony on the community property dispute on September 22, 2006, and issued reasons for judgment on October 9, 2006, awarding Mrs. Gremillion "possession and ownership" of the Mercedes and ordering that she "assume any and all debt associated therewith." Mrs. Gremillion did not make the monthly payments thereafter, and the lien holder contacted Mr. Gremillion numerous times concerning the delinquent debt. On November 29, 2006, Mr. Gremillion had the vehicle picked up from Mrs. Gremillion's driveway and voluntarily surrendered it to the lien holder. Mrs. Gremillion then caused Mr. Gremillion to be arrested for theft, but an Avoyelles Parish Grand Jury failed to indict him for the offense, and the State of Louisiana did not pursue the charge. After the lien holder sold the vehicle at public auction, Mr. Gremillion paid the balance due on the indebtedness, $9,486.31.

Mr. Gremillion sought general and special damages from his former wife because of the facts surrounding the repossession of the Mercedes. In testimony, he asserted that the contacts from the lien holder as well as his arrest caused him mental

anguish, worry, and sleepless nights.[8]    Additionally, he claimed that Mrs. Gremillion's actions and inactions affected his credit rating.  Specifically, he testified that he was denied two loan applications and a credit card because the repossession appeared on his credit history.

The trial court awarded Mr. Gremillion judgment against his former wife for the $9,486.31 he paid to the lien holder as special damages, and awarded him $20,000.00 in general damages "representing his false arrest and credit damage regarding the Mercedes automobile."   In making these awards, the trial court concluded that Mrs. Gremillion's actions "were contentious and designed as a ploy to damage Mr. Gremillion."

We agree that Mr. Gremillion is entitled to recover the $9,486.31 he paid to fully satisfy the balance due on the Mercedes-Benz Financial note.  As between he and the lien holder, he remained personally liable for the indebtedness despite the trial court's allocation of that indebtedness to Mrs. Gremillion.  By paying the indebtedness, he then became a creditor of Mrs. Gremillion via legal subrogation. La.Civ.Code art. 1829.  Therefore, we find no error in the trial court's award of this amount.

The $20,000.00 general damage claim is another matter.  The record before us simply does not support this award.  Before the trial court's reasons for judgment were rendered on October 9, 2006, the Mercedes indebtedness belonged to the community.  Mr. Gremillion took possession on November 29, 2006.  Thus, Mrs. Gremillion only had sole ownership of the vehicle and the sole obligation associated with the indebtedness for less than two months.  Equally important, Mr. Gremillion

---

[8]Although he testified that he was treated by a psychiatrist for his complaints, no medical testimony was presented in this regard.

8

filed a copy of the Mercedes-Benz Financial monthly statement dated November 7, 2006, in support of his claim. This statement reveals that the payment schedule: required a payment of $622.03 on the twenty-sixth day of each month; that as of August 26, 2006, the note was already three payments behind, and;[9] that apparently payments had been made for the months of September and October.[10]

Turning to Mr. Gremillion's arrest for theft, we note that the appropriate claim is that of malicious prosecution rather than false arrest. This court, in *Wiley v. Wiley*, 01-726, pp. 3-4, (La.App. 3 Cir. 11/7/01), 800 So.2d 1106, 1109, *writ denied*, 01-3232 (La. 2/8/02), 809 So.2d 129, addressed the approach the court must take in such cases, as well as the elements to be established, as follows:

> The Louisiana Supreme Court has stated that "actions of this sort have never been favored" and a "clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." *Johnson v. Pearce*, 313 So.2d 812, 816 (La.1975). *See also, Southern Gen. Agency, Inc. v. Safeway Ins. Co. of* La., 99-1892 (La.App. 3 Cir. 6/7/00; 769 So.2d 606, *writ denied*, 00-2055 (La.10/6/00); 771 So.2d 89. Accordingly, a plaintiff must prove six elements to succeed in a malicious prosecution case.
>
> > (1) The commencement or continuance of an original criminal or civil judicial proceeding;
> >
> > (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding;
> >
> > (3) its bona fide termination in favor of the present plaintiff;
> >
> > (4) the absence of probable cause for such proceeding;

---

[9]The statement reflects that the amount due on that date was $1,866.09, or exactly three times the monthly obligation of $622.03.

[10]The statement lists the past due amount as of August 26, 2006, but lists only the currently due payment of $622.03 for the month of November, together with late charges. Apparently subsequent payments were credited to the more recent payment due.

(5)     the presence of malice therein; and

(6)     damage conforming to legal standards resulting to plaintiff.

*Robinson v. Goudchaux's*, 307 So.2d 287, 289 (La.1975).  *See also, Terro v. Chamblee*, 95-70 (La.App. 3 Cir. 7/19/95); 663 So.2d 75.

In the matter before us, we find that proof of the fourth element is lacking.

Louisiana Revised Statutes 14:67(A) provides:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations.  An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

Mr. Gremillion does not dispute that as of October 9, 2006, the trial court awarded his former wife ownership of the Mercedes.  Therefore, when he had the vehicle picked up on November 29, 2006, he knew that he had no ownership interest.  Additionally, he deprived his former wife permanently of the vehicle by delivering it to the lien holder.  His actions clearly fit the definition of theft, establishing probable cause for his former wife's actions.

We find that the trial court erred in awarding general damages to Mr. Gremillion for the Mercedes transaction.  Therefore, we set aside the $20,000.00 damage award.

***Damage to Marital Domicile***

Mr. Gremillion also sought a monetary award for damages allegedly caused to the marital domicile before Mrs. Gremillion surrendered the premises to him, and for the cost of reconnecting various utility services.

According to Mr. Gremillion, when he gained possession of the marital home on April 1, 2007, he found all of the utilities disconnected.  Therefore, the first thing

10

he had to do was pay the reconnecting costs. Specifically, he testified that he paid a $90.00 reconnect fee to his electricity provider as well as a $223.09 electric bill. Additionally, Mr. Gremillion testified that he paid a $308.57 CenturyTel telephone bill and a $16.68 Dish Network bill.

According to Mr. Gremillion, he inspected the house the day after his former wife vacated it, and found extensive damage. He testified that he replaced a broken window in the living room window at the cost of $322.65; replaced four sets of interior bi-fold doors, two interior doors, one entry door, and three deadbolt locks at a cost of $1,058.20; replaced the living room carpet at the cost of $1,842.00; replaced mini blinds throughout the home at the cost of $167.62; and repainted the interior of the house and performed sheetrock repair at the cost of $2,500.00. He further asserted that damage to counter tops in the house would require repair at the cost of $10,580.00, although at the time of trial he had yet to make those repairs.

Donald Gremillion, Mr. Gremillion's brother, accompanied him on April 1, 2007, and supported his brother's testimony concerning the condition of the premises. According to Donald Gremillion, the interior was filthy and the outside had been clearly neglected. He observed a hole in the couch which he attributed to Mrs. Gremillion's dog, and noted that the dog had urinated on the carpet. He observed that the walls were filthy, trash was scattered throughout the house (especially in the kitchen), and noted the damages testified to by Mr. Gremillion. Donald Gremillion took pictures of the house's condition and helped his brother clean up part of the debris. He also observed that furniture had been removed.

Mrs. Gremillion acknowledged in her testimony that the house suffered some damage, but attributed most of it to normal wear and tear. She claimed that a tractor

11

on an adjacent field had thrown a rock through the window sometime during December of the previous year.[11] She specifically denied leaving the house in disarray and testified that she returned to the house to clean it after she had vacated it, but found that Mr. Gremillion had disconnected the electricity and water. Mrs. Gremillion denied that the closet bi-fold doors needed replacing, stating that they had always gotten off their tracts. She acknowledged throwing away some of the mini-blinds, but stated that she did so because they were falling apart. In any event, she asserted that the mini-blinds were purchased with money provided to her by her father and, therefore, they were her property and not her former husband's. She further acknowledged that her dog had scratched a hole in the sofa, but stated the damage occurred before Mr. Gremillion left the marital domicile. She also acknowledged that the dog had sometimes urinated on the carpet, but testified that she and her former husband had already begun removing the carpet before she acquired the dog. Mrs. Gremillion admitted that she did not maintain the yard. She stated that she was unable to mow the grass as Mr. Gremillion had taken the keys to the riding lawn mower. She further stated that she did not bother to maintain the flower beds as Mr. Gremillion told her that he was going to use Round Up on them.

In its reasons for judgment, the trial court found that Mrs. Gremillion was not a credible witness and accepted all of Mr. Gremillion's testimony concerning the damage repair costs and re-connection fees. In doing so, the trial court awarded Mr. Gremillion the following special damages:

| | |
|---|---|
| Cost to replace bi-fold closet doors, two interior doors, the front entry door, and three deadbolts | $ 1,058.20 |

---

[11]Mr. Gremillion testified that no work was being done in the adjacent field during January and February.

| | | |
|---|---|---:|
| Cost to replace carpet | $ | 1,842.00 |
| Repair of living room window | $ | 322.65 |
| Cost to replace mini-blinds | $ | 167.62 |
| Interior painting costs | $ | 2,500.00 |
| Cost to replace counter tops and repair cabinets | $ | 10,580.00 |

It is well settled that the trial court's factual findings should not be disturbed absent manifest error. *Stobert v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). We find no manifest error in the trial court's factual determination on this damage issue. It is equally well settled that the trial court's award of damages is not to be disturbed absent an abuse of discretion. *Guillory v. Lee*, 09-75 (La. 6/26/09), 16 So.3d 1104. We find no abuse of discretion in the awards listed above.

The trial court also awarded Mr. Gremillion $20,000.00 in general damages and re-habitation costs. We find error in this award.

The trial court concluded factually that Mrs. Gremillion "intentionally left the subject home in considerable disrepair." While we may have reached a different conclusion, we find no manifest error in that factual finding. Given that factual finding, Mr. Gremillion established one of the four situations wherein a plaintiff can collect mental anguish resulting from property damages: When the damage is a result of an intentional or illegal act. *Kolder v. State Farm Ins. Co.*, 520 So.2d 960, (La.App. 3 Cir. 1987); *Stanford v. Town of Ball*, 05-38 (La.App. 3 Cir. 6/1/05), 903 So.2d 1235, *writs denied*, 05-1684, 05-1709 (La. 1/9/06), 918 So.2d 1053, 1057. What is missing is any evidence that Mr. Gremillion suffered any emotional damages associated with Mrs. Gremillion's actions with regard to the house.[12] Damage is an element of proof, and because Mr. Gremillion failed to carry his burden of establishing emotional damages, we reduce the $20,000.00 award to $738.34, being

---

[12]All of Mr. Gremillion's testimony concerning emotional damages related to the Mercedes situation.

13

the amount he incurred in reconnecting utilities to the home and paying the outstanding household bills.

Finally, the trial court awarded Mr. Gremillion $8,608.17 based on Mr. Gremillion's testimony concerning the items of furniture taken from the marital home. We find this award to be in error.

All of the items taken were community property that was yet to be divided. The trial court reached the amount of the award by accepting Mr. Gremillion's testimony concerning the value of some of the items taken, and well as what Mr. Gremillion spent to replace other community items with new furniture. The trial court then divided the total by one-half, and awarded Mr. Gremillion that total.

In reversing this award, we initially notice that Mr. Gremillion was not seeking a supplemental property division in his pleadings. That being the case, Mrs. Gremillion had just as much right to the items at issue as did Mr. Gremillion. Thus, the trial court decided an issue not before it—a property partition issue—and did so in the context of a tort judgment. We reverse this award.

*Answer to Appeal*

For the reasons set forth herein in modifying the trial court judgment, we find no merit in Mr. Gremillion's answer to the appeal.

**DISPOSITION**

For the foregoing reasons, the judgment of the trial court granting a preliminary injunction in favor of Mr. Gremillion is reversed, as is the trial court's judgment awarding Mr. Gremillion $20,000.00 in general damages pertaining to the Mercedes vehicle and $8,608.17 in damages representing one half of the value of furniture removed from the marital home by Mrs. Gremillion. Furthermore, the judgment of

14

the trial court awarding Mr. Gremillion $20,000.00 in general damages and re-habitation costs pertaining to the marital home is amended to reduce the amount awarded to $738.34.  The judgment of the trial court is affirmed in all other respects.  The costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.**

15

NUMBER 10-0005

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

GLYNN P. GREMILLION

VERSUS

ANITA GRIMES GREMILLION

AMY, J., concurring in part and dissenting in part.

I agree with much of the majority's opinion. However, I respectfully dissent from that portion of the opinion reversing the trial court's award for damages associated with Mr. Gremillion's surrender of the vehicle to the creditor.

In my opinion, the trial court's award of damages is supported by the record. Certainly, the vehicle's ownership was in transition at the time of the vehicle's surrender. Although the trial court's reasons for ruling awarding Mrs. Gremillion ownership of the vehicle had been rendered at the time the vehicle was taken, the related judgment had not yet been signed. Nor, of course, had the suspensive appeal been perfected. This unfolding situation, in my opinion, supports the trial court's determination that damages were appropriate for criminal proceedings instituted against Mr. Gremillion.

As for the quantum of damages awarded for the difficulties surrounding the vehicle, I recognize that $20,000 is at the upper range of the trial court's discretion. However, the trial court's award recognized both the frustration associated with the creditors and the criminal proceedings, which included an arrest and a grand jury review. Accordingly, I find that the award of general damages is supported by the record and that the quantum was within the trial court's discretion.

For these reasons, I dissent in part.