NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-98

KAREN MAY, ET AL.

VERSUS

THE SUCCESSION OF MAYO ROMERO, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 132465
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Jonathan W. Perry, Judges.

AFFIRMED.

**Gabe A. Duhon**
**Wyman E. Bankston**
**Post Office Box 478**
**Abbeville, Louisiana  70511**
**(337) 893-3423**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Counsel for Robby Bethel, Administratrix**
     **of the Succession of  Louis Carrier**

**Robby Bethel**
**In Proper Person**
**517 St. Jude Avenue**
**New Iberia, Louisiana  70560**
**(337) 577-7564**

**Charles Connell Wilson**
**Tregg C. Wilson**
**Wilson & Wilson**
**5713 Superior Drive, Suite B1**
**Baton Rouge, Louisiana  70816**
**(225) 663-1900**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Karen May, former Administratrix**
     **of the Succession of Louis Carrier**

**Keith Mayo**
**Mayo, Mendolia & Vice, LLP**
**110 North College, Suite 101**
**Tyler, Texas  75702**
**(903) 747-3422**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Karen May, former Administratrix**
     **of the Succession of Louis Carrier**

**Kelly B. Becker**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana  70139-5099**
**(504) 581-7979**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Chevron USA, Inc.**
     **Texaco, Inc.**

**Jacques J. Cousin**
**Cousin & Cousin**
**211 East Main Street**
**New Iberia, Louisiana  70560**
**(337) 367-2581**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **J. E. Schwing, Inc.**
    **Succession of John Elmer Schwing**

**Leon Joseph Minvielle, III**
**Haik, Minvielle & Grubbs**
**Post Office Box 11040**
**New Iberia, Louisiana  70562-1040**
**(337) 365-5486**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Glenn Romero, Individually**
    **Glenn Romero, Trustee Lilly Romero Grandchildren's Trust**
    **Glenn Romero, Administrator Succession of Mayo Romero**

**CONERY, Judge.**

The Succession of Louis Carrier and Sylvany Carrier (hereafter "The 2006 Succession"), through its administratrix Karen May, filed suit against the following Defendants: The Succession of Mayo Romero, the Lilly Romero Grandchildren's Trust through Glenn Romero, their administrator and trustee, respectively (Romero Successions); Glenn Romero, Individually; The Succession of John Elmer Schwing through its administrator James W. Schwing, Sr., and J.E. Schwing, Inc. (Schwing); Texaco, Inc. F/K/A/ The Texas Company, and Chevron USA, Inc., the successor to Texaco (Chevron). The 2006 Succession claimed that it was owed unpaid oil and gas royalties and that Defendants had committed fraud and violated the Louisiana Unfair Trade Practices Act (LUTPA). Defendants filed a number of peremptory exceptions, including prescription, which was granted by the trial court. For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Plaintiff's ancestor Mr. Louis Carrier, married to Sylvany Settler Carrier, acquired 23 acres of immovable property in Iberia Parish, Louisiana in the late 1800s. A "Petition To Open Succession with Administration" was granted by the trial court on January 18, 2006, and filed by the clerk of court on January 20, 2006, appointing as administratrix Robbie Bethel[2] and co-administratrix, Rita Landry, who sought to open The 2006 Succession. Mr. Carrier died intestate in 1946, and Sylvany Settler

---

[1] Defendants' additional peremptory exceptions of no cause and no right of action were rendered moot. Defendants' exception of lack of procedural capacity was cured by agreement of the parties.

[2] Ms. Bethel's name is spelled two ways in the documents in the record. In the January 20, 2006 petition naming her as succession administratrix it is spelled "ROBBIE" and in subsequent submissions "Robby." Both usages refer to the same person, who is a great-grandchild of the decedents.

Carrier died intestate in 1948. In their 2006 petition, the petitioners explained their purpose for seeking to open both successions with administration:

10.

There is a need for administration of this succession due to the numerous legal issues which will arise in litigation [sic] title issues, oil & gas royalty claims and other legal issues, which will require litigation counsel.

. . . .

13.

Upon information and belief that Decedents owned property in Iberia Parish, Louisiana and elsewhere, wherein oil & gas was extracted by various oil companies and fraudulently paid to other parties, Petitioners deem it necessary to retain counsel on a contingency fee basis in order to investigate and litigate the claims of the estates.

In the petition's prayer for relief, the petitioners asked the court that they "be allowed to enter into a contingency fee contract with litigation counsel to investigate and litigate claims of the estates[.]"

After a hearing before the trial court on October 4, 2012, Ms. Bethel and Ms. Landry were removed as administratrix and co-administratrix from The 2006 Succession. The trial court simultaneously appointed Ms. May as administratrix and Mr. Hillard Smith as co-administrator of The 2006 Succession.

On July 5, 2018, Ms. May, as administratrix of The 2006 Succession, filed the present suit against adjoining landowners, as well as Texaco and Chevron.[3] In response to The 2006 Succession's petition, the remaining Defendants all filed the

---

[3] Ms. May, also on behalf of The 2006 Succession, filed suit against The Succession of J. Paulin Duhe, through its administrator Thomas G. Duhe (Duhe Succession), who failed to answer the petition prior to the trial court's judgment of August 6, 2019. On September 24, 2019, the Duhe Succession filed the identical exceptions, adopting the memoranda in support as well as the evidence filed in the record by the other Defendants. The Duhe Succession likewise asked the trial court to grant its exceptions and dismiss The 2006 Succession's claims. The Duhe Succession exceptions are not before us having been filed after the trial court's judgment in this case.

2

exceptions of no right of action, no cause of action, lack of procedural capacity, and prescription. The parties agreed to hold a hearing on the Defendants' exceptions of prescription in lieu of a hearing on the other exceptions. However, the Schwing Defendants also sought a hearing on its exception of lack of procedural capacity, which ultimately was cured by agreement of the parties and the filing of a supplemental petition containing the necessary documentation to determine that Ms. May, who was appointed administratrix in 2012, had the procedural capacity to proceed, hence that issue has been resolved.

The trial court conducted a hearing on the exceptions of prescription on April 8, 2019, and heard testimony from Ms. May, which differed from the affidavit she submitted in opposition to the Defendants' exceptions of prescription.[4] The Defendants adopted the affidavit of Chevron's expert Mr. James G. Diehl, which was attached as Exhibit A to Chevron's memorandum in support of its exception of prescription. The trial court also accepted into evidence the January 2006 Petition To Open Succession With Administration.

After hearing arguments from counsel and considering the briefs in the record, for written reasons assigned, the trial court found in favor of Defendants and granted their exceptions of prescription, dismissing all of The 2006 Succession's claims then pending with prejudice, and assessed all costs to Ms. May and The 2006 Succession. The trial court found that all prescriptive periods for the claims made by The 2006 Succession had expired and that The 2006 Succession had the necessary constructive knowledge in 2006 that they might have a claim. In fact, the 2006 petition clearly

---

[4] The parties stipulated that the testimony of Mr. Smith would be identical to that of Ms. May. Counsel for Chevron objected to the testimony of Ms. May on the basis that "any testimony trying to contradict what's in the public record is irrelevant." Counsel for Chevron preserved that same objection to the stipulated testimony of Mr. Smith.

indicates that it was filed in order to seek to obtain any royalties that might have been due and to hire an attorney to investigate the claim.

Additionally, the trial court rejected the argument that additional time was needed to conduct discovery, as approximately thirteen years (13) had passed since The 2006 Succession was opened.

Post judgment, on October 13, 2019, Ms. May and Mr. Smith resigned as administratrix and co-administrator of The 2006 Succession. On October 14, 2019, Ms. Robbie Bethel, who was the original administratrix of The 2006 Succession, was once again appointed administratrix. On October 28, 2019, Ms. Bethel perfected a timely appeal.

## ASSIGNMENT OF ERROR

The 2006 Succession filed one assignment of error on appeal, which states:

The trial court erred in granting the Defendants' Exception of Prescription without providing Plaintiffs an opportunity to conduct discovery to ascertain the nature of their causes of action.

## LAW AND DISCUSSION

### *Standard of Review*

A panel of this court in *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128 (citations omitted), *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043, succinctly set forth the standard of review applicable to an exception of prescription:

The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not.

4

In this case, the trial judge heard evidence, made factual findings, and assessed the credibility of the witness. The trial court specifically stated that "This Court bases its written decision solely on the limited testimony and evidence presented at the hearing." Accordingly, the standard of review applicable to this case is manifest error. *See Stevenson v. Progressive Sec. Ins. Co.*, 19-637 (La. 4/3/20), _So.3d _;[5] *Lee v. Amer. Supply Co.*, 18-893 (La.App. 3 Cir. 11/6/19), 283 So.3d 605.

***Prescriptive Periods at Issue***

The 2006 Succession lodged claims of fraud, violation of LUTPA, and unpaid oil and gas royalties against Defendants. The prescriptive period for claims of fraud in Louisiana is one year as provided by La.Civ.Code art. 3492:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

The prescriptive period for a violation of the LUTPA is one year as provided by La.R.S. 51:1409 as follows:

> A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.
>
> . . . .

---

[5] 2020 WL 1671565

5

E. The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action.

The three-year prescriptive period for unpaid mineral royalties is provided by La.Civ.Code art. 3494:

(5) An action to recover underpayments or overpayments of royalties from the production of minerals, provided that nothing herein applies to any payments, rent, or royalties derived from state-owned properties.

However, there was no evidence presented at the hearing that any contract or agreement had ever been perfected which would entitle The 2006 Succession to base a claim for unpaid royalties. Therefore, the trial court, out of an abundance of caution, also found that the general provision of the ten-year prescriptive period applicable to a contractual agreement, if applied to The 2006 Succession's claim, would also have expired. La.Civ.Code art. 3499.

### The 2006 Succession's Argument In Opposition

In its briefing to this court, The 2006 Succession claims that the trial court erred in granting the Defendants' exceptions of prescription and erred in not allowing further discovery. Ms. May claimed that she did not personally view oil and gas activity on the property until 2017, when she allegedly saw a pump-jack on the property. Therefore, her attorney argued The 2006 Succession's claims are not prescribed, as suit was filed on July 5, 2018, some six months later.

The appeal brief filed by The 2006 Succession also raised for the first time the continuing tort doctrine. The continuing tort doctrine was not raised in the trial court by memorandum or in oral argument. It is well settled that "a court of appeal will not consider an issue which is raised for the first time on appeal." *Gremillion v. Gremillion*, 10-5, p. 6 (La.App. 3 Cir.7/7/10), 43 So.3d 1063, 1068, *writ denied*, 10-

2125 (La. 12/10/10), 51 So.3d 726.  Uniform Rules – Courts of Appeal, Rule 1-3.

*See also Ducote v. Union Pac. R.R. Co.*, 08-1208, 08-1001 (La.App. 3 Cir. 2/4/09),

4 So.3d 240, *writ denied*, 09-940 (La. 6/5/09), 9 So.3d 877.

*Contra Non Valentem*

The 2006 Succession further argued that even if the claim had been filed

beyond the normal prescriptive periods, the doctrine of *contra non valentem*

suspended the running of prescription.  Louisiana Civil Code Article 3467 provides

that "[p]rescription runs against all persons unless exception is established by

legislation."  Where legislation is silent, the Louisiana Supreme Court has held three

theories may be used by a plaintiff "to establish that prescription has not run, to wit,

suspension, interruption or renunciation."  *Wimberly v. Gatch*, 93-2361 (La.

4/11/94), 635 So.2d 206, 211.

As did the plaintiffs in *Wimberly*, The 2006 Succession relies on the

suspensive theory of "*contra non valentem agere nulla currit praescripto,* which

means, 'prescription does not run against a party unable to act'" *Id*.  "The doctrine

of contra non valentem applies as an exception to the statutory prescriptive period

where in fact and for good cause a plaintiff is unable to exercise his cause of action

when it accrues."  *Specialized Loan Serv., LLC v. January*, 12-2668, p. 5 (La.

6/28/13), 119 So.3d 582, 585.  *See also Wimberly*, 635 So.2d 206.

The Louisiana Supreme Court in *Specialized Loan*, 119 So.3d at 585 (citing

*Wimberly*, 635 So.2d 206) set forth the four instances where the doctrine of *contra*

*non valentem* may be applicable:

> (1) where there was some legal cause which prevented the courts or
> their officers from taking cognizance of or acting on the plaintiff's
> actions; (2) where there was some condition coupled with a contract or
> connected with the proceedings which prevented the creditor from
> suing or acting; (3) where the debtor himself has done some act

effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

The doctrine, however, applies only in "exceptional circumstances." La.Civ.Code art. 3467, Official Revision Comment (d). "The doctrine of *contra non valentem* distinguishes between personal disabilities of the plaintiff (which do *not* prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which suspends its running)." *Wimberly*, 635 So.2d at 212. "The equitable doctrine is, in part, but an application of the long-established principle of law that one should not be able to take advantage of one's own wrongful act." *Id.* (citing *Nathan v. Carter*, 372 So.2d 560 (La.1979)). "The equitable nature of the circumstances in each individual case has determined the applicability of the doctrine." *Nathan*, 372 So.2d at 563.

The 2006 Succession argues that categories three and four are applicable to its *contra non valentem* claim. They are discussed separately below.

### *Category Three – Contra Non Valentem*

The third category of the doctrine applies "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action[.]" *Whitnell v. Menville*, 540 So.2d 304, 308 (La.1989) (citing *Plaquemines Par. Comm'n Council v. Delta Dev. Co.*, 502 So.2d 1034 (La.1987), *superseded on other grounds as stated in Jenkins v. Sterns*, 11-1170 (La. 01/24/12), 85 So.3d 612; *Corsey v. State Dep't of Corr.*, 375 So.2d 1319 (La.1979)).

Although The 2006 Succession claims that Defendants concealed the claims advanced in its petition of July 5, 2018, The 2006 Succession failed to present any facts or evidence of the alleged concealment to the trial court. Clearly, any

concealment would have ceased in 2006, when The 2006 Succession was opened and placed in the public record. The petition to open The 2006 Succession was based on the need to hire an attorney to further investigate the claims of oil and gas activity on the Carrier property. According to the record before us, no attorney was hired on The 2006 Succession's behalf, and no investigation of any of the documents that could form a basis for the alleged claims was ever conducted by The 2006 Succession.

The 2006 Succession alleged in its opposition to the exceptions of prescription that a "Notice of Purchase" filed by Chevron's predecessor, the Texas Company in 1934, and its 1936 execution of an oil and gas lease on the property demonstrate an intent to obtain oil proceeds from the Carrier property without payment. However, neither the "Notice of Purchase" nor the lease were submitted into the record. "This Court is a court of record and can only review what is contained in the record on review." *NOLA 180 v. Harrah's Operating Co., Inc.*, 12-72, p. 3 (La.App. 4 Cir. 5/16/12), 94 So.3d 886, 888, *writ denied*, 12-1391 (La. 10/8/12), 98 So.3d 855.

In response to The 2006 Succession's claims of concealment, Defendants' expert, Mr. Diehl, clearly attested in his undisputed affidavit, submitted into evidence in support of Defendants' exceptions of prescription, that after extensive examination of the title documents in Iberia Parish and relevant documents held in the Louisiana Department of Natural Resources, "no well was ever drilled on the 23 acres of property in Iberia Parish" identified as Carrier property and that the Carrier property "was never pooled or unitized (whether by voluntary or compulsory instrument) with any well drilled on nearby tracts."

We therefore find that The 2006 Succession failed to submit any factual basis or evidence that Defendants intended to conceal drilling activities alleged to have

been conducted on the Carrier property in order to support the application of *contra non valentem* and defeat Defendants' exceptions of prescription.

*Category Four – Contra Non Valentem*

Category four applies "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Specialized Loan*, 119 So.3d at 585. Category four is known as the discovery rule, which provides that prescription begins to run on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987). Therefore, "[p]rescription does not run against one who is ignorant of the facts upon which his claim is based, as long as such ignorance is not willful, negligent or unreasonable." *In Re Med. Review Panel of Howard*, 573 So.2d 472, 474 (La.1991).

The Louisiana Supreme Court in *Hogg v. Chevron USA, Inc.*, 09-2632, p. 7 (La. 7/6/10), 45 So.3d 991, 997-98 defined and discussed the constructive knowledge necessary for prescription to commence and stated:

> Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry. *Campo v. Correa*, 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 510-511. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription. *Id.* In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, **this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances.** *Id.*; *Griffin v. Kinberger,* 507 So.2d 821, 824 n. 2 (La.1987)

(Emphasis added.)

Defendants argue, and this court agrees, that Ms. May's lack of personal knowledge of the situation which might give rise to claims based on property owned

10

by The 2006 Succession is irrelevant. Ms. May is not bringing this action in her personal capacity, but on behalf of The 2006 Succession. Ms. May was not the administratrix of The 2006 Succession at its inception, having been appointed in 2012. However, she testified at the hearing that she never read The 2006 Succession petition, which clearly demonstrated The 2006 Succession's knowledge of the potential alleged claims for royalties and concealment brought in the Succession's July 5, 2018 petition that is the source of this appeal.

The evidence submitted at the hearing included the original petition filed in January 2006 seeking to open the Succession of Louis and Sylvany Carrier with Administration, which provides in Paragraphs 10 and 13 the purpose of the opening of The 2006 Succession, filed approximately sixty years after the deaths of Louis and Sylvany Carrier. In particular, the petition instituting The 2006 Succession alleged ownership of the property "wherein oil & gas was extracted by various oil companies and fraudulently paid to other parties." The prayer for relief sums up the petition's request, "[t]hat petitioners be allowed to enter into a contingency fee contract with litigation counsel to investigate and litigate claims of the estates." This language demonstrates and supports the trial court's reasons for judgment that The 2006 Succession was well aware of its potential claims in 2006, that all claims are prescribed, and more than enough time has passed for The 2006 Succession to conduct discovery in this matter. The trial court's succinct reasons for judgment provide as follows:

> [T]his court finds that prescription on all claims began to run at the time of the filing of THE PETITION TO OPEN THE SUCCESSION OF LOUIS CARRIER. The language of the petition is specific enough to establish that this succession was fully aware and on notice of the claims that it seeks to bring now. With that, THE SUCCESSION OF LOUIS CARRIER was opened in January of 2006. More than thirteen

11

(13) years [sic] have passed since that time. Therefore, facially, all claims have prescribed.

THE SUCCESSION OF LOUIS CARRIER argues that not enough information has been discovered with which to substantiate its claims, nor has it fully realize[d] the extent of the succession's claims or damage sustained. This Court finds that ample time, 13 years[,] and 6 months, has passed for this succession to do what it felt it needed to do and discover whatever information or evidence it has felt the need to do and discover. Additionally, a request for extension of time does not suffice to toll prescription. In the absence of any existing factual circumstances which would lay the foundation for an interruption of prescription, the prescriptive period has run. Therefore, this Court has no choice, but to grant DEFENDANTS' EXCEPTION OF PRESCRIPTION. This court bases its written decision solely on the limited testimony and evidence presented at this hearing. Without more, this Court is limited to this decision.

We find no manifest error in the trial court's judgment granting Defendants' exceptions of prescription and affirm its decision.

## CONCLUSION

For the foregoing reasons, we find that the trial court did not commit manifest error in granting Defendants' exceptions of prescription. We therefore affirm in its entirety the trial court's judgment of August 6, 2019, dismissing with prejudice all the claims asserted by Karen May and Hillard Smith, as the duly appointed administratrix and co-administrator for the Succession of Louis and Sylvany Carrier, against Chevron U.S.A., Inc., Texaco Inc., J.E. Schwing, the Succession of John Elmer Schwing, Glenn Romero, individually, and as trustee of the Succession of Mayo Romero and as trustee of the Lilly Romero Grandchildren's Trust. All costs are to be borne by Karen May and Hillard Smith, as the duly appointed administratrix and co-administrator for the Succession of Louis Carrier.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3